## State *v.* Forshner.

Upon a trial for rape, the general bad character of the prosecutrix for chastity may be shown, but not particular instances of unchaste conduct, unless with the accused.

The testimony of witnesses to the general character of the prosecutrix as to chastity must be confined to their knowledge of it before the offense was committed. They can not be allowed to testify to any knowledge since acquired.

Persons exempted from service as jurors, are not thereby disqualified to serve on a jury. A verdict will not be set aside because a person so exempted was one of the jury.

Indictment against Thomas D. Forshner for rape, alleged to be committed September 2, 1860. The prisoner offered evidence in regard to the character of the prosecutrix for chastity. The court ruled that the witnesses must confine themselves to what they knew of her character prior to September 2, 1860, and not speak of any knowledge of her character since acquired, to which the respondent excepted.

It appeared after the verdict was rendered, and before judgment, that one of the jurors was an ordained minister, and that fact was not in any way known to the respondent or his counsel, until after the verdict was rendered. The respondent moved for a new trial, or that judgment be arrested, on both these grounds; but the court refused, and rendered judgment in the case, and allowed this bill of exceptions.

*Blair*, Solicitor, for the State.

*H. Bingham*, for the respondent.

Bell, C. J. In criminal prosecutions the charge of rape, or of an assault with intent to commit a rape, is considered as involving, not only the general character of the prosecutrix for chastity, but the particular facts of her previous criminal connection with the prisoner, though not with other persons. The character of the prosecutrix for chastity may therefore be impeached by general evidence of her reputation in that respect, but not by evidence of particular instances of unchastity. Nor can she be interrogated as to a criminal connection with any other person; except as to her previous intercourse with the prisoner himself; nor is evidence of such previous instances admissible. 3 Greenl. Ev., sec. 54, 214; 1 Phill. Ev. 468; 2 Wat. Arch. Cr. P. 37; Ros. Cr. Ev. 95, and authorities there cited.

In cases where the character of the witness for truth is in question, the point of inquiry is, whether, when he takes his place upon the stand to testify, he has such a character as entitles his statements to be believed. It is therefore held in *State* v. *Howard*, 9 N. H. 468; *Hoitt* v. *Moulton*, 21 N. H. 586, that those inquiries relate to the time of the examination, and are not limited to the time at and before the transaction in question. But in the case of an indictment for rape, the question is not what is the character of the witness for chastity now, for that inquiry is not admissible to affect the general credibility of the witness; *Boyd* v. *Lewis*, 13 Johns. 504; *Commonwealth* v. *Churchill*, 11 Met. 538; *Spears* v. *Forest*, 15

Vt. 435; *Rahlman* v. *Rose*, 18 Wend. 146 ; *Frye* v. *Bank of Illinois*, 11 Ill. 367 ; *Hoitt* v. *Moulton*, 21 N. H. 586 ; and it has no possible bearing upon the question whether the witness consented, or was forced to submit at a former time. A state of facts proved to have once existed, is presumed to continue, unless some reason is shown for doubt. But the reverse is not true. The bad character a person may have now, is not assumed to have always existed, nor to have existed at any previous time. The inquiries as to bad character for chastity, in cases both civil and criminal, where the character is regarded as involved in the issue, are limited to the time previous to the transaction in question. *Rex* v. *Clarke*, 2 Stark. Cas. 241 ; *People* v. *Abbot*, 19 Wend. 192 ; *Boynton* v. *Kellogg*, 3 Mass. 189 ; 3 Stark. Ev. 1269 ; 1 Phill. Ev. 489 ; 3 Greenl. Ev., sec. 54.

The court held that the witnesses called to impeach the character of the prosecutrix for chastity, upon a trial for rape, must confine themselves to what they knew in regard to her character before the offense charged, and not speak of their knowledge afterward acquired. It is strenuously insisted that this ruling was incorrect. But we think the principle is settled in *Douglas* v. *Toucey*, 2 Wend. 352, cited for the State. " One of the witnesses of the defendant went to the former residence of the plaintiff to learn her character, and to subpoena witnesses to prove such character while she resided at that place ; and the defendant offered to prove by him, that he learned there that her character was bad. The general character, says Marcy, J., is the estimation in which a person is held in the community where he has resided, and ordinarily the members of that community are the only proper witnesses to testify as to such character. It would be unsafe to rely upon the testimony of the defendant's agent, sent into that community an entire stranger, it may be, to collect information to subserve the plaintiff's views in the suit. Such witness would not speak his own knowledge of the plaintiff's character, or give his own opinion in relation thereto, but barely state his own conclusion upon the information received from others. This would be hearsay, and nothing more."

Where the present character is in question, what the party has heard said by others living near the witness, is a means of judging of the present state of public opinion. But when the question is of the character of the witness at a former date, and the witness knows nothing personally of the estimate of the community at that time, he must speak either of what he has heard, which is mere hearsay, or of his conclusions from what he has heard related by others, which is still less reliable. The tendency of the admission of such evidence to induce attempts to destroy the character of a prosecutrix, in order to defeat the prosecution, is obvious and most dangerous. We entertain no doubt, therefore, that the evidence was properly restricted by the court.

By the Revised Statutes (ch. 176, sec. 3), " Ordained ministers," among others, " are exempted from serving on juries, and their names shall not be placed on said lists of jurors." This provision creates no personal disqualification of the persons enumerated to serve on the jury; but its operation is to give to them an exemption from the

duty, of which they may avail themselves, if they think proper. It is no cause for setting aside a verdict that a person thus exempted, has served on the jury without the knowledge of the party against whom the verdict is found. This was so held in the recent case of *Munroe* v. *Brigham*, 19 Pick. 368, upon a statute closely resembling our own, and is well supported by earlier authorities. Bac. Abr., Juries, E, 6; *Rex* v. *Sutton*, 8 B. & C. 417; *Rex* v. *Sullivan*, 8 A. & E. 31; *Amherst* v. *Hadley*, 1 Pick. 38; *Davis* v. *People*, 19 Ill. 74.

By the force of the term exempted, we understand the party without the exemption would be liable to perform the duty. A person disqualified, and therefore incompetent and incapable, can not be exempted from a duty or a service, when the law imposes no such duty or service upon him. Such an exemption is a personal privilege, with which the parties to the cause have no concern, and which furnishes them no cause of challenge, though the court, upon the suggestion made from any quarter, that a person returned as a juror was exempted, would ordinarily decline to hold him to a duty to which he is not liable, and would of course excuse him.

*Exceptions overruled.*