Rockingham,
No. 4531.

CHARLES A. PIKE *v.* JUSTIN D. HARTFORD & *a.*

Argued January 2, 1957.

Decided March 26, 1957.

474

*Leo Liberson* and *John DeCourcy* (*Mr. Liberson* orally), for the plaintiff.

*Burns, Calderwood & Bryant* and *William A. Galanes* (*Mr. Galanes* orally), for the defendants.

BLANDIN, J. The reserved case transfers the defendants' exceptions to specified paragraphs of the Court's findings "and to other rulings made by the Court." The exceptions themselves do not appear. While the findings excepted to can be identified although they are not numbered, it is impossible to determine what rulings were excepted to. In *Nixon* v. *Cooper*, 97 N. H. 327, 329, it was pointed out that reserved cases or bills of exception are "merely instruments by which exceptions previously taken may be presented to this court." They do not relieve counsel of the duty of seeing that there is a record of his exceptions in writing, if they are to be considered here.

The duty to state the exceptions for the record rests upon counsel, and the burden is upon him to see that they are transferred. *Adams* v. *Severance*, 93 N. H. 289. The obligation to see that a bill of exceptions is "conformable to the truth of the case" (RSA 490:10), and that a reserved case likewise presents exceptions which can be identified upon the record, rests upon the Presiding Justice. *Lavigne* v. *Nelson*, 91 N. H. 304, 310. Unless court and counsel perform their reciprocal duties in this regard, transfer to

this court can be of little value to the parties. *Whelton* v. *Daly* 93 N. H. 150, 156.

Since it is impossible to identify any exception to rulings in this case, our consideration of it apart from the exception to findings cannot go beyond errors apparent upon the face of the record. See *Sandown* v. *Kelley*, 97 N. H. 418.

The essential findings were as follows. The disputed property and the lots of both plaintiff and defendants originally belonged to one Mendum. In January, 1902, his administrators conveyed the northern portion of the tract with a house on it to a predecessor in title of the defendants. In December of the same year the administrators conveyed the southerly tract to Arabella Cotton, predecessor in title of the plaintiff. The Court also found:

"At the time of these conveyances the northerly tract had a house upon it which reached practically to the passageway on its southerly side. This house faced on Chestnut St. To the east of this house were some stables and also a clothes reel. Chestnut Street runs in a southerly to northerly direction. The passageway was used almost exclusively for the delivery of coal to the house on the northerly tract. It is found that the passageway was created for the benefit of the occupants of the house on the northerly tract to afford access to the rear of said house for coal deliveries and such other use required to obtain access to the rear of the house. Dominion over said passageway has been exercised by the petitioner and his predecessors in title from almost the time the lot was conveyed and most certainly since 1930. The house on the northerly tract was razed in 1930 and no building has replaced it. The lot is now used as a parking lot by the petitionees. By deeds dated July 14, 1955, and August 15, 1955, the heirs of Charles Mendum, now known, released their right, title and interest in said passageway to the petitioner. While the petitionees have made claim to ownership of the fee in the twelve foot tract by adverse possession they have failed to substantiate that claim."

The Court ruled on the basis of these findings that the plaintiff had title to the so-called passageway by adverse possession and also as a result of a release from the Mendum heirs. He further found and ruled that the right of passage over the passageway "no longer exists or is necessary" because the house which the easement served was gone and the defendants were using the tract of land upon which the building formerly stood as a parking lot. They now have direct access from it to Chestnut Street.

There was testimony from as far back as 1920 that the plaintiff's predecessors in title to the hotel property occupied the passageway continuously and exclusively for "parking cars." It was used only by the hotel owners and their guests. The "general understanding" was that the "Hotel always owned it." Thereafter, in 1931, the plaintiff bought the property and under a claim of exclusive right continued using the passageway "Every night and every day," blocking it completely with parked cars. Neither the defendants' predecessors in title nor the defendants ever complained of this usage. They never suggested that they had any right to the disputed strip nor did they ever try to use it until 1954. At one time prior to this the defendants moved equipment over the passageway to their printing presses but they first secured the plaintiff's permission to do so. By granting a request by the plaintiff, the Trial Court ruled that "this use of the so-called passageway daily for over twenty years for the parking of cars by petitioner and his hotel guests was inconsistent with the use of the said area as a passageway." We believe that the evidence warranted the findings and rulings as to adverse user, and that the Court could properly find that the plaintiff has ownership of the passageway by deed which by reason of adverse user is free from any encumbrance in favor of the defendants. *Gowen* v. *Swain*, 90 N. H. 383, 386.

By virtue of the original grants the parties were entitled to use the passageway in common even though technically they may not thereby have become tenants in common of the easement. See 3 Tiffany, Real Property (3rd *ed.*), *s.* 756, *p.* 202. Use of the passageway by the plaintiff for passing and repassing was a use which he was entitled to make by virtue of his grant, but the use for the constant parking of automobiles could reasonably be found inconsistent with the defendants' rights to pass and repass, as well as to constitute notice to the defendants and their predecessors of a claim of right adverse to their rights. *Jean* v. *Arsenault*, 85 N. H. 72. In view of this conclusion it is unnecessary to determine whether the findings and rulings that the defendants' rights in the easement were extinguished for other reasons are sustainable. Since no errors affecting the result appear upon the face of the record the order is

*Decree affirmed.*

WHEELER, J., took no part in the decision; the others concurred.