Rockingham
No. 7199

STATE OF NEW HAMPSHIRE v. JOSEPH J. WILLIAMS

July 31, 1975

438

*Warren B. Rudman,* attorney general, and *David W. Hess,* assistant attorney general *(Mr. Hess* orally), for the State.

*Leonard, Prolman, Prunier, & Mazerolle (Mr. Richard W. Leonard* orally) for the defendant.

KENISON, C.J. The issue to be decided by this case is whether the transcripts of a defendant's testimony in a probable cause hearing in district court and of his testimony on a motion to set bail in superior court are admissible in a subsequent trial of the defendant for first degree murder. RSA 630:1-a (Homicide, First Degree Murder). Prior to the trial the State informed the defendant and the superior court that it intended to offer the two transcripts as evidence of the defendant's guilt. *Cann,* J., reserved and transferred without ruling the question of the admissibility of the transcripts as part of the State's case.

On the advice of his attorney the defendant testified in his own behalf in the probable cause hearing and in the hearing on the motion to set bail which were both held on May 1, 1974. The reason for this rather unusual procedure was the belief of the defendant's counsel that the first degree murder charge was unwarranted by the facts and that it should be reduced at an early stage in the proceedings.

The record clearly reveals and it is not disputed that the defendant's testimony in both of the hearings was voluntarily and understandingly given. *Miranda v. Arizona,* 384 U.S. 436, 460 (1966); *Powers v. United States,* 223 U.S. 303, 314 (1912); *see* 3 J. Wigmore, Evidence § 826, at 351-52 (Chadbourn rev. 1970); *Boykin v. Alabama,* 395 U.S. 238, 242-43 (1969); 8 J. Wigmore, Evidence § 2266, at

400-01 (McNaughton rev. 1961). The probable cause hearing was held in the Hampton District Court at 1:30 p.m. on May 1, 1974; the hearing on the motion to set bail was held later that same afternoon before the superior court in Exeter. The following preliminary interchange occurred during the superior court hearing:

THE COURT: Excuse me, Mr. Leonard, I assume that you have instructed your client that he has a right not to testify and that if he does testify that any statements that he makes may and will be used against him in the prosecution of this case?

MR. LEONARD: That's right, your honor. I have advised him of that, and he testified at the probable cause hearing this afternoon.

THE COURT: You understand that?

WITNESS: Yes, sir.

Although the superior court expressly warned the defendant that he had a right to remain silent, the district court did not do so. RSA 596-A:3 (Preliminary Examinations, Caution to Accused).

I. Transcript of the Probable Cause Hearing

As a general rule of evidence testimony given at a former hearing pursuant to a voluntary and understanding waiver of the privilege against self-incrimination is admissible at any subsequent trial. *Harrison v. United States,* 392 U.S. 219, 222 (1968); *United States v. Houp,* 462 F.2d 1338, 1340 (8th Cir. 1972); 8 J. Wigmore, Evidence § 2276, at 459 (McNaughton rev. 1961). The defendant argues that the rule is inapplicable to the admissibility of the transcript of the probable cause hearing since that hearing was not a trial, but merely a "legal proceeding to establish the probability of a crime having been committed." U.S. CONST. amend. V; N.H. CONST. pt. I, art. 15. It is defendant's position that because he was not formally accused by an indictment at the time of the hearing and since the district court failed to warn him of his right to remain silent, his testimony at the hearing should be inadmissible at trial.

Although the constitutional position of a defendant at a preliminary hearing to determine probable cause is not entirely clear, constitutional protections have been increasingly expanded in recent years to encompass the incipient stages of the criminal process. RSA 596-A:3; *Gerstein v. Pugh,* 420 U.S. 103, 114 (1975); *see* J. McCormick, Evidence § 130, at 273 n.6 (1972); 5 F. Wharton, Criminal Procedure § 2013, at 151 (R. Anderson ed. 1957); *id.* (Supp. 1974, at 71). RSA 596-A:3 specifically recognizes the importance of protecting the accused at preliminary examinations by requiring that the "court shall . . . inform the accused that he is not required to make a statement or to testify, but that any statement or testimony given by him may be used against him." *See* Peterson, *The Federal Magistrates Act: A New Dimension in the Implementation of Justice,* 56 Iowa L. Rev. 62, 78-79 (1970); Note, 79 Yale L.J. 926, 936 (1970).

While a probable cause hearing is obviously not a trial, it is an essential preparatory stage in the criminal process preceding formal indictment and trial. Note, *Preliminary Examination Potential,* 58 Marq. L. Rev. 159, 159-60 (1975); Theis, *Preliminary Hearings in Homicide Cases: A Hearing Delayed Is A Hearing Denied,* 62 J. Crim. L. 17, 18 (1971). In the course of performing its basic functions of determining whether an offense has been committed and if there is probable cause to believe that the prisoner committed it, the district court may piece together the evidentiary skeleton which could provide the basis for a future trial. *Smith v. O'Brien,* 109 N.H. 317, 318, 251 A.2d 323, 324 (1969); *see* Note, *The Preliminary Hearing – An Interest Analysis,* 51 Iowa L. Rev. 164, 171 (1965). By providing the protection of counsel and the right to remain silent at the preliminary hearing, RSA 596-A:3 insures that the determination of probable cause will be something more than a routine proceeding leading inevitably to indictment and trial. The statutory protections envision an adversary process during which charges without sufficient supporting evidence will be eliminated. *See* Goldstein, *The State and the Accused: Balance of Advantage in Criminal Procedure,* 69 Yale L. J. 1149, 1166-69 (1960).

As a matter of pretrial strategy an accused may, on the advice of his attorney, voluntarily choose to forego the protection against self-incrimination afforded to him by RSA 596-A:3 in an attempt to convince the court that probable cause does not exist. Note, 51 Iowa L. Rev. 164, 173 (1965); Note, *Preliminary Hearings on Indictable Offenses in Philadelphia,* 106 U. Pa. L. Rev. 589, 590 (1958). If one exercises his prerogative to testify at a probable cause hearing

after having been informed of his right to remain silent, he does so with the knowledge and at the risk that what he says may be used at a later trial for the crime charged. *People v. James,* 29 Mich. App. 522, 526-27, 185 N.W.2d 571, 574 (1971).

Since the defendant in this case knowingly and understandingly waived his right to remain silent during the preliminary hearing to determine probable cause, the transcript of that testimony is admissible in his subsequent trial for the offense charged. The fact that the defendant was not indicted at the time of the hearing is immaterial since he was afforded by statute and in fact the same safeguards as one who is so charged. In this case the transcript is admissible despite the district court's failure to give the statutory warning since the statement of the defendant's counsel and the assent of the defendant himself before the superior court on the same afternoon as the probable cause hearing show that the defendant was fully apprised of his statutory and constitutional rights. Under these circumstances the purposes of the statute to inform and to protect the prisoner at a preliminary hearing were satisfied.

Nor does the case of *Simmons v. United States,* 390 U.S. 377 (1968), dictate a different result in this instance. *See The Supreme Court, 1967 Term,* 82 Harv. L. Rev. 95, 214-20 (1968). In *Simmons* a defendant testified prior to trial that he owned certain clothing which was part of a government exhibit, in order to establish his standing to move for suppression of the evidence under the fourth amendment. 390 U.S. at 389. The "only, or at least the most natural . . . ." way in which a defendant could gain standing to object to the admissibility of the evidence was to testify that he owned it. *Id.* at 391. Under the rule generally prevailing prior to *Simmons,* if the defendant testified in order to establish his standing to make a fourth amendment objection, he did so at the risk that what he said would later be used to incriminate him. *Id.* at 392. That rule created an intolerable tension between the rights guaranteed by the fourth and the fifth amendments as a result of which a defendant might be compelled to forego an attempt to suppress illegally seized evidence in order to avoid incriminating himself. To relieve the tension between the two constitutional rights, the Supreme Court held that when a defendant testifies in support of a motion to suppress evidence on fourth amendment grounds, the testimony may not be admitted against him at trial on the issue of guilt unless he does not object. 390 U.S. at 394.

Testimony knowingly given by a prisoner at a probable cause hearing is not necessarily the product of the inevitable tension

that the *Simmons* case sought to eliminate. In order to exercise his constitutional right *(i.e.* to gain standing to claim his personal rights under the fourth amendment), the defendant in *Simmons* was compelled to take the stand. In this case a preliminary hearing is provided as of right by RSA 596-A:3. *See Gerstein v. Pugh,* 420 U.S. 103, 114 (1975). While the accused may waive the preliminary hearing *(see* 596-A:4), he does not have to relinquish any other constitutional right in order to have a judicial determination of probable cause.

Although pretrial strategy may indicate that testifying at the probable cause hearing might be advantageous to the defendant, there is no constitutional compulsion to testify like that of establishing standing to suppress evidence under the fourth amendment. *See United States v. Kahan,* 415 U.S. 239, 242-43 (1974). "The criminal process, like the rest of the legal system, is replete with situations requiring 'the making of difficult judgments' as to which course to follow. Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token forbid requiring him to choose. The threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved." *McGautha v. California,* 402 U.S. 183, 213 (1971) (citations omitted); *see* Groot, *The Serpent Beguiled Me and I (Without Scienter) Did Eat — Denial of Crime and the Entrapment Defense,* 1973 U. Ill. L. F. 254, 273-74. Where, as here, the defendant had the opportunity to present evidence to a neutral magistrate on the issue of probable cause by a variety of means *(See Gerstein v. Pugh,* 420 U.S. 103, 120 (1975)), his conscious choice to do so by testifying himself did not encroach upon any constitutional right.

## II. Transcript of the Hearing on the Motion to Set Bail

Defendant's contention that the transcript of his testimony in the hearing on the motion to set bail should not be admitted at trial, is more persuasive. Unlike a probable cause hearing in which the court determines threshold questions regarding the commission of a crime, the only issue before the court in a hearing on a motion to set bail is insuring that the accused will appear as required. *Reynolds v. United States,* 80 S. Ct. 30, 32 (1959); 4 F. Wharton, Criminal Law and Procedure § 1808, at 649-50 (R. Anderson ed. 1957); *see* Note, *Preventive Detention Before Trial,* 79 Harv. L. Rev. 1489 (1966); Symposium, *Constitutional Problems in the Administration of Criminal Law, Bail: The Need for Reconsideration,* 59 Nw. U. L. Rev. 678, 678-79 (1964).

Defendant's own testimony regarding the crime may be critical to a court's determination whether he should be set free pending trial. ABA Minimum Standards for Criminal Justice, Pretrial Release § 5.1(b) (Approved Draft, 1968). Since the "law favors the release of defendants pending determination of guilt or innocence" (*Id.* § 1.1), a defendant should be encouraged to testify at a hearing on a motion to set bail without the fear that what he says may later be used to incriminate him. *See* Note, *Administration of Pretrial Release and Detention: A Proposal for Unification,* 83 Yale L.J. 153, 155 (1973). Of course, the "need to complete legitimate investigative operations or the risk that a particular defendant will not reappear if released may require that some conditions be imposed on his release, and sometimes these conditions may result in his being unable to gain his freedom." ABA Minimum Standards for Criminal Justice, Pretrial Release § 1.1, Commentary, at 25 (Approved Draft, 1968); RSA 597:1, as amended by Laws 1974, 34:4. Both the purpose of the bail hearing to insure defendant's appearance and the strong policy of our law to avoid unnecessary deprivations of liberty require that the defendant's testimony at the bail hearing in this case be excluded from evidence at his later trial.

*So ordered; defendant's exceptions sustained in part.*

GRIMES, J., dissented; the others concurred.

GRIMES, J., dissenting in part and concurring in part:

I concur in part II of the opinion of the court which holds that defendant's testimony at the bail hearing is not admissible as part of the State's case, but I most respectfully dissent from part I, which holds that his testimony at the probable cause hearing is admissible at trial.

Our probable cause hearing is not essential to a prosecution, but its purpose is simply to determine if there is probable cause to detain the subject pending action by the grand jury. *State v. Chase,* 109 N.H. 296, 249 A.2d 677 (1969); *Smith v. O'Brien,* 109 N.H. 317, 251 A.2d 323 (1969); *State v. St. Arnault,* 114 N.H. 216, 317 A.2d 789 (1974).

This is exactly the kind of hearing which was held to be required to meet fourth amendment requirements in *Gerstein v. Pugh,* 420 U.S. 103 (1975), where it was said: "Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships . . . . [T]he detached judgment of a neutral

magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty. Accordingly, we hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint on liberty following arrest." *Id.* at 114.

The sole question at the probable cause hearing was whether there was probable cause to believe the defendant committed the crime with which he was charged. "If there was, the suspect would be committed to jail or bailed pending trial. If not he would be discharged from custody." *Gerstein v. Pugh, supra* at 115.

In the case before us the defendant was faced with the problem whether to give up what he, with advice of counsel, believed to be his valid fourth amendment claim not to be deprived of his liberty pending action by the grand jury or "in legal effect, to waive his Fifth Amendment privilege against self-incrimination". *Simmons v. United States,* 390 U.S. 377, 394 (1968).

Thus, the same "undeniable tension" existed here as was present in *Simmons* where it was said, "[W]e find it intolerable that one constitutional right should have to be surrendered in order to assert another. We therefore hold that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt . . . ." *Simmons v. United States, supra* at 394.

There can be no difference in principle in testifying to assert a fourth amendment right to suppress evidence and to assert a fourth amendment right not to be detained without probable cause.

Thus, in my opinion, there is even more reason to exclude the testimony at the probable cause hearing than at the bail hearing. If the defendant could establish a lack of probable cause, he would not be required to post bail.