Hillsborough
No. 7117
No. 7118
No. 7119
No. 7120
No. 7121

STATE OF NEW HAMPSHIRE v. PAUL E. LEMIRE

SAME v. RANDALL D. THOMPSON

SAME v. LEON R. CHASSE

SAME v. LIONEL E. POLIQUIN

SAME v. STEVEN ACORN

September 30, 1975

*Warren B. Rudman,* attorney general, and *Edward N. Damon,* attorney *(Mr. Damon* orally), for the State.

*Jean-Claude Sakellarios* (of Massachusetts) and *John F. Bielagus* (both orally) for the defendant Lemire.

*Ernest A. Jette,* by brief and orally, for the defendant Thompson.

*Kfoury & Williams (Mr. Joseph Williams* orally) for the defendant Chasse.

*Prolman & Holland (Mr. Francis G. Holland* orally), for the defendant Poliquin, joins in brief for Lemire (No. 7117).

*Kfoury & Williams* and *Alexandra T. Breed (Mr. Paul R. Kfoury* orally) for defendant Acorn.

GRIMES, J. Multiple procedural and substantive questions of criminal law have been transferred to us from the convictions of some or all of the defendants for the crimes of rape and unnatural acts. RSA 585:16 (Crime of Rape) (repealed by Laws 1973, ch. 370:9); RSA 579:9 (Lascivious Acts) (repealed by Laws 1973, ch. 532:26). Both statutes were respectively superseded by RSA 632:1 (1973) (Rape) and RSA 632:2 (1973) (Deviate Sexual Relations). For purpose of this transfer, the grounds for reversal of the trial conviction can be conveniently grouped into five claims which are: (1) newly discovered evidence; (2) failure to disclose exculpatory evidence; (3) defense of consent; (4) the acts were not unnatural; and (5) a prejudicially unfair trial was conducted, *i.e.,* publicity, inaccurate and prejudicial closing statement by prosecution.

Exceptions arising from the trial held in May 1973, and from a motion for a new trial which was denied after a hearing held on May 17, 1974, were transferred by *Loughlin,* J.

The facts as developed are essentially these. On December 15, 1972, Susan Towle, the complaining witness, was staying with her sister, Kathleen Baker, and her four-year-old nephew at their apartment on Orange Street, Manchester, New Hampshire. Early in the evening, a few friends were visiting playing records, watching television and socializing. Somewhere around 10 p.m. that night, Ray Hudon and eight or nine of his friends or acquaintances, members of the Die-Hard motorcycle group, arrived at the apartment. At that time, most of those already at the apartment left with the exception of Susan Towle, Kathleen Baker and her four-year-old child. There is evidence that Hudon told Susan Towle that "she wasn't going anywhere" despite the fact that she had her coat on and was apparently ready to leave.

From this point on, the evidence becomes contradictory. However, there was evidence that Hudon then brought Towle into one of the bedrooms and tore off her clothes. Towle testified that defendant Lemire then entered and after subduing her with a slap proceeded to have intercourse with her against her will. Lemire denied this but on the stand admitted he committed fellatio with her.

Towle and other witnesses also described a series of acts including fellatio, cunnilingus and assault. In addition to Towle's testimony, there was substantial evidence corroborating lack of consent, including but not limited to the probable presence of a pistol, the size and

strength of the group of men involved, and the conduct of this group, including possible threats on Towle's life if she failed to cooperate.

Defendants do not deny their presence in the apartment on the evening of December 15, 1972, and the early morning hours of December 16, 1972, when the crimes were said to have occurred. In fact, defendants Lemire and Acorn took the stand and admitted their presence and Lemire admitted to at least one act of fellatio with Susan Towle. However, the gist of their defense is consent to the acts and that the alleged unnatural acts which occurred were not in fact unnatural.

After reporting the incident to the police during the early morning of December 17, 1972, Towle was treated at the Sacred Heart Hospital in Manchester. A gynecologist who examined her found that her private parts were bruised and she had cuts on one leg and the lower lip. No spermatozoa, however, were found in the victim. Nonetheless, the injuries were said to be generally consistent with the events alleged to have occurred on the night prior thereto.

All five defendants were convicted: Lemire of rape and an unnatural act (fellatio); Thompson of an unnatural act (cunnilingus); Chasse of an unnatural act (fellatio); Poliquin of rape and of an unnatural act (fellatio); and Acorn of rape and of an unnatural act (fellatio).

Prior to trial, the deposition of Kathleen Baker, sister of Towle, was taken by defendant's trial counsel and the State. After trial, Kathleen Baker then allegedly on her own came forward and gave a sworn statement to present defense counsel Sakellarios and Bielagus which was transcribed and submitted as an exhibit during the hearing on the motion for a new trial. Counsel contend this constitutes newly discovered evidence, which contradicts Baker's first story and suggests her sister consented to the acts committed. Failure to discover this evidence prior to trial was through no fault of defense counsel, they claim, since the police allegedly threatened to cause Baker to lose custody of her child unless she went along with the story that her sister did not consent. Moreover, counsel claimed that this new evidence would probably bring about a different result and therefore requires a new trial. The trial court denied a new trial on May 29, 1974.

At that same hearing, counsel presented testimony of a juror and claimed that the trial was prejudicially tainted because the jurors viewed the search of all spectators and that this created an unfair atmosphere in which to conduct the trial. The juror, however, also

testified that the jury never discussed this matter and there is no direct evidence suggesting any prejudice to the trial because of this security precaution even though within the view of the jurors.

## I. Motion for New Trial

We cannot say that the trial court erred in denying a new trial. To do so would require us to rule that the evidence compelled favorable findings of all facts necessary to justify a new trial. The trial judge in denying a new trial noted that Kathleen Baker's deposition showed that she had a fear of retaliation if she attempted to intervene on her sister's behalf. He also found that "this atmosphere of terror and intimidation permeated into the actual trial of the case." He stated that there was evidence that her hospitalization, which prevented her from being present at the trial, was due to her "fear of testifying and of the possible untoward results to her if she did testify by defendants or their friends." He also pointed out that she was the girl friend of Hudon who had pleaded guilty to related charges prior to trial of these defendants and that Hudon, although called as a witness by the State, refused to testify. He noted that her after-trial statement was taken by defense counsel and was given in response to questions which were "leading and suggestive of the answers" and further that she was and had been residing in California for over a year.

Although these findings do not expressly relate to those necessary for the granting of a new trial *(McGinley v. Railroad,* 79 N.H. 320, 109 A. 715 (1919); *State v. Nelson,* 105 N.H. 184, 196 A.2d 52 (1963)), they indicate that in denying the motion for a new trial the court found that some requirements had not been met. The evidence presented in the record before us would not permit us to rule that the trial court was compelled to make the required finding that a different result on retrial was probable. *Cf. Hall v. Insurance Co.,* 91 N.H. 6, 13 A.2d 157 (1940). This itself is sufficient to uphold the denial.

Nor is a new trial required as a matter of law because of any alleged prejudicial atmosphere created prior to or during the trial. In this case, the record reveals no motion requesting change in venue, voir dire of the jury to purge any specific taint, sequestration of the jurors or severance of the trials because of any prejudicial evidence or activity. *Pike v. Hartford,* 100 N.H. 473, 474-75, 130 A.2d 540, 542 (1957). Nor can we say after reviewing all the trial transcripts and documents that any specific activity or evidence or

any cumulative series of events demonstrates sufficient prejudice to require reversal and a new trial. *State v. Conklin,* 115 N.H. 331, 341 A.2d 770 (1975); *State v. Booton,* 114 N.H. 750, 756, 329 A.2d 376, 383 (1974); *cf.* ABA Standards, Fair Trial and Free Press §§ 3.2, 3.4, 3.5(6) (e) and (f), 3.6 (Approved Draft 1968).

Defense counsel raises the possibility that the verdicts may be tainted because at least one juror, and possibly all, saw some of the defendants arriving at the courtroom in shackles and spectators being searched before being allowed to enter. *See O'Shea v. United States,* 400 F.2d 78, 79 (1st Cir. 1968); *United States v. Larkin,* 417 F.2d 617, 618 (1st Cir. 1969). However, the record on the motion for a new trial indicates that the juror who testified did not possess any kind of fixed opinion which would raise the presumption of partiality and compel disqualification. *Irvin v. Dowd,* 366 U.S. 717, 722-25 (1961). Nor is there any evidence that at the time of trial, the defense objected and excepted to the security procedures used at the trial or that the defendants were prejudiced thereby.

## II.  Nondisclosure of Exculpatory Evidence

Defendants contend that Kathleen Baker's after-trial statement indicates that both she and her sister had originally given statements to the police which indicated consent on the part of Susan, that the police had threatened Kathleen with the loss of custody of her son unless she cooperated with the prosecution, and that Susan had willingly participated in "gang bangs" on prior occasions and indicated willingness to do so in the future. It is contended that the failure of the prosecution to disclose these statements deprived defendants of due process and requires a new trial under *Brady v. Maryland,* 373 U.S. 83 (1963). *See also State v. Dukette,* 113 N.H. 472, 309 A.2d 886 (1973).

This issue of nondisclosure arose at the hearing on motion for new trial but was denied because the trial judge found that the issue was either waived or that there was no evidence to substantiate the charge. The test in this State requiring the disclosure of exculpatory evidence is that the "evidence favorable to the defense [which] has been withheld . . . has a reasonable likelihood of affecting the judgment of the jury." *State v. Booton,* 114 N.H. 750, 756, 329 A.2d 376, 381 (1974). To trigger the obligation to disclose, the defense must at least in a general fashion make an explicit "production request." *Moore v. Illinois,* 408 U.S. 786, 794 (1972). Here the record reveals no such request to trigger the standard of review as formulated

in *Booton* and we therefore cannot rule that the trial court committed error. Moreover, it is this very evidence which was found insufficient to make a different result probable.

### III. Defenses

Since a necessary element to make a prima facie case of rape is lack of consent, a showing of consent would constitute a complete defense to the crime. 65 Am. Jur. 2d *Rape* §§ 7-14, 38 (1972, Supp. 1975); R. Perkins, Criminal Law 160-68 (2d ed. 1969). Lack of consent may be proved in a variety of ways, including but not limited to an attempt to escape, outcry, or offer of resistance, except where the complaining witness is restrained by fear of violence. *Id.*

Defendants Lemire, Poliquin, and Acorn who were convicted of rape now advance the claim that the trial judge erred by ruling that before the defense of consent could be asserted, one or all of the defendants to this charge would have to take the stand, thereby necessitating an unconstitutional trading-off of their right to remain silent in turn for claiming a legitimate defense. *Simmons v. United States,* 390 U.S. 377 (1968); *State v. Williams,* 115 N.H. 437, 343 A.2d 29 (1975); *Brooks v. Tennessee,* 406 U.S. 605 (1972). Additionally, defendants allege that limiting cross-examination of the prosecutrix in such a fashion so as to prevent introduction of specific acts of sexual intercourse with persons other than the defendants, under the principles of *State v. Forshner,* 43 N.H. 89 (1861), violates the defendants' right to confront witnesses as provided by the sixth amendment. *Packineau v. United States,* 202 F.2d 681 (8th Cir. 1953).

We find nothing in the record to indicate either that the court conditioned the defense of consent upon one or more of the defendants taking the stand or that any defendant excepted to such a ruling even if it had been made. In addition, the trial judge expressly and "emphatically" denied having made such a ruling. The record indicates only that the judge simply ruled that *State v. Forshner supra* was applicable, thereby limiting evidence to specific previous acts of unchastity between the defendants and prosecutrix while admitting only evidence as to general reputation as to unchastity when dealing with sexual relations with those other than the defendants. *State v. Bass,* 93 N.H. 172, 177, 37 A.2d 7, 11 (1944). *See also* 2 Wharton, Criminal Evidence §§ 437 (13th ed. C. Torcia 1972, Supp. 1974). We find it impossible to believe that any reasonable interpretation of such a ruling chilled any of the defendants' fifth or sixth amendment rights. Indeed, this bar to cross-examination did not prejudice

defendants since all the relevant evidence sought to be elicited made it into the record anyway. We also decline the invitation to overrule *State v. Forshner supra,* which has been part of our law for over one hundred years and reflects the majority rule in this country. Annot., 140 A.L.R. 364, 382-85 (1942).

## IV. Unnatural Acts

Insofar as the crimes regarding unnatural acts are concerned, defendants raise two defenses: first, that acts must be proved to be unnatural according to modern social mores and that therefore acts of cunnilingus and fellatio are not per se illegal between unmarried heterosexual couples, and second, that consent is a defense to the crime of unnatural acts in light of recent United States Supreme Court decisions regarding the right to privacy.

Taking the last claim first, this defense was not preserved on the record at trial, so we need not consider it on appeal even if the acts in question here could be found to have been committed in private. We also hold that unnatural acts as used in the statute include as a matter of law, cunnilingus and fellatio. 81 C.J.S. *Sodomy* §§ 1-3 (1953, Supp. 1975). Indeed, it has been a long-standing tenet of this court that our statutory scheme goes beyond prohibiting only common law sodomy and includes those acts which are involved in this case. *State v. Vredenburg,* 91 N.H. 372, 19 A.2d 414 (1941); *State v. Wickey,* 108 N.H. 336, 235 A.2d 527 (1967). There cannot therefore be any basis for a claim of vagueness in these cases as to what is prohibited whether the acts are in fact unnatural or not.

## V. Type of Proof and Other Matters

While all the elements of a crime must be proved beyond a reasonable doubt *(In re Winship,* 397 U.S. 358, 364 (1970); *accord, Mullaney v. Wilbur,* 421 U.S. 684, 696-98 (1975)), in New Hampshire it is well settled that a conviction for the crime of rape does not depend upon the corroboration of the prosecutrix's testimony. *State v. Blake,* 113 N.H. 115, 123, 305 A.2d 300, 305 (1973); *State v. Robbins,* 114 N.H. 427, 430, 321 A.2d 583, 585 (1974). In fact, the trend of modern authority is towards abolishment of the corroboration requirement. Note, *The Rape Corroboration Requirement: Repeal Not Reform,* 81 Yale L.J. 1365 (1972). *See generally,* Hibey, *The Trial of a Rape Case: An Advocate's Analysis of Corroboration, Consent, and Character,* 11 Am. Crim. L. Rev. 309, 310-19 (1973). Therefore, we can see no sound reason to accept the invitation to abandon our present rule.

Likewise, we find no cognizable claim for any prejudice caused by the prosecution's closing argument. None of the incidents specifically complained of in the brief for the defense were objected to at trial. In this State, as elsewhere, it is axiomatic that timely objections and reservation by exception are the standard manner to save issues for appeal. *State v. Blake,* 113 N.H. 115, 120, 305 A.2d 300, 304 (1973); 5 Wharton, Criminal Law and Procedure §§ 2046-49 (R.A. Anderson ed. 1957, Supp. 1974). The failure to have objected at the time, when corrective measures could have been taken, constitutes a waiver.

Nor can we find any valid basis for the defendants' claim that discrepancies in sentences for the similar crimes of rape committed were a violation of equal protection of the laws. While we have noted the possible effect of disparate sentencing for the same crime without a rational basis *(State v. Streeter,* 113 N.H. 402, 308 A.2d 535 (1973)), we have never indicated that a trial judge on the basis of facts available to him may not structure different sentences for the same crime to achieve the goals of punishment, deterrence, protection of society and rehabilitation. *See State v. Church,* 115 N.H. 537, 345 A.2d 392 (1975); S. Rubin, Law of Criminal Correction ch. 4, §§ 1-8 (1973).

We have also reviewed the remaining claims of the defendants and find them to be without merit. Accordingly, the order of the court is

*Exceptions overruled.*

All concurred.