**Paul E. LEMIRE, Petitioner, Appellant,**

v.

**Richard T. McCARTHY et al.,
Respondents, Appellees.**

**No. 77–1356.**

United States Court of Appeals,
First Circuit.

Argued Nov. 10, 1977.
Decided Feb. 2, 1978.

Jean-Claude Sakellarios, Boston, Mass., with whom John F. Bielagus, Lowell, Mass., was on brief, for petitioner, appellant.

Peter W. Heed, Asst. Atty. Gen., Concord, N. H., with whom David H. Souter, Atty. Gen., Concord, N. H., was on brief, for respondents, appellees.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, GORDON, District Judge *.

COFFIN, Chief Judge.

Petitioner seeks a writ of habeas corpus predicated on alleged errors leading to his conviction in New Hampshire superior court for both rape and unnatural acts.[1] The issues were first raised by his motion for

new trial, in which he alleged error by the court in requiring petitioner "to take the stand and testify on his own behalf prior to and contingent upon [sic] the admissibility of certain evidence concerning the character and prior conduct of the prosecutrix." By amendment of this motion, petitioner added the ground that the court erred in instructing his attorney that "prior to introducing impeachment evidence against the prosecutrix, specifically, her general reputation as to unchastity, the defendants would be required to plead the defense of consent and to do so were required to take the stand and testify in open court." The trial judge denied making such a ruling. The New Hampshire Supreme Court, in *State v. Lemire*, 115 N.H. 526, 345 A.2d 906 (1975), overruled all exceptions.

Petitioner then sought habeas corpus in federal district court, on the grounds that the state trial court improperly ruled, off the record, that petitioner must, contrary to the Fifth Amendment, take the stand and testify in order to establish a defense of consent to the charge of rape; and that, prior to cross-examining the prosecutrix on the issue of consent, petitioner must assert that his defense was consent and that he would take the stand to establish this defense, thus forcing him to choose between exercising his Fifth Amendment right not to testify and his Sixth Amendment right to examine witnesses. The court denied relief on this issue but scheduled an evidentiary hearing to consider the suppression issue, *see infra*. At this hearing petitioner made an offer of proof on the consent issue to the effect that the trial judge "stated that if the defendants were interested in a defense of consent that it would be necessary for at least one of the defendants to take the stand." The district court refused to change its prior ruling and denied the writ.

---

* Of the Eastern District of Wisconsin, sitting by designation.

1. Petitioner was tried, together with five co-defendants, for the group rape of Susan Towle. According to the prosecutrix, petitioner and seven or eight companions arrived at an evening gathering at the home of her sister Kathleen Baker, prevented her attempted departure, and forced her to participate in various forms of sexual activity with eight males. Baker and her small son remained in an adjoining room throughout the episode.

Now, on appeal, petitioner frames his challenges thusly: (1) that the district court erred in refusing to consider the offer of proof that the trial court required petitioner to take the stand to establish a defense of consent; and (2) that the district court erred in refusing to consider evidence that the state court required petitioner to assert a defense of consent before it would allow cross-examination of the prosecutrix.

 A district court is required to take additional evidence on a petition for writ of habeas corpus if the allegations establish a *prima facie* case of constitutional error and the relevant facts were not reliably determined by the state court or are incapable of reconstruction from the record. *Townsend v. Sain*, 372 U.S. 293, 312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *United States ex rel. Lewis v. Henderson*, 520 F.2d 896, 902 (2d Cir. 1975); *Souza v. Howard*, 488 F.2d 462 (1st Cir. 1973). We find that the record of this case is not silent. Portions of it arguably permit the possibility that the trial court made an off the record ruling which trenched upon petitioner's constitutional rights. Viewed as a whole, however, the record affirmatively shows the trial court's position on petitioner's rights and that it did not adversely affect petitioner's exercise of them.

The offer of proof to the district court was to the effect that the trial court had ruled that a defendant, not necessarily petitioner, would have to take the stand and assert the defense of consent before anyone could cross-examine the prosecutrix on consent. This seems to be borne out by the record. After the prosecutrix finished her direct testimony, the court, in a chambers conference attended by the prosecutor, co-defendant Landry, and his counsel, established that Landry had volunteered to testify. Immediately following this conference, counsel for petitioner began what was to be the largest portion of cross-examination of the prosecutrix. It focused on evidence from which consent might be inferred, in-

cluding most prominently her sexual adventures with co-defendant Landry. While counsel was not allowed to try to establish that the witness had had sexual relations with others, evidence was elicited that she and another man had been alone in a bedroom a week before the instant incidents, and that she had gone to New York with a married man and two teenage boys.

Subsequently, co-defendant Landry took the stand. His testimony portrayed the prosecutrix as having sexual relations without objection with others on the night of the incidents involved in this case, as having had such relations on prior occasions with him, and as being a sexually aggressive person. Landry was cross-examined by counsel for the state, by counsel for petitioner and counsel for a third defendant. Counsel for a fourth defendant indicated no desire to examine. At the conclusion of Landry's testimony, counsel for petitioner made an offer of proof that he would be able to introduce evidence that the prosecutrix had engaged in countless sexual relationships prior to the incidents giving rise to the present charges, but that he understood that the court would not, because of its view of New Hampshire law,[2] admit this evidence.

A colloquy between court and counsel then took place. The court announced ("so that we will have a clear record and so the Supreme Court can understand the position of the Trial Court at this moment") its understanding that no other defendant would take the stand and testify that the prosecutrix was engaging in a voluntary act. Various defense counsel, including petitioner's, said that their clients might take the stand. The court acknowledged its understanding that parties were free to change their mind, but noted that it would rule on the offer of proof on the assumption that the defendant to testify was Landry. Counsel then stated their understanding "that if one defendant took the stand we

---

**2.** In *State v. Forshner*, 43 N.H. 89 (1861), the New Hampshire court had adopted the rule barring evidence in a rape trial of specific acts of sexual intercourse between the prosecutrix and persons other than defendants.

all—the door is open for everybody to proceed on that basis." The court agreed, but made clear that this did not allow defense counsel for another defendant to bring in evidence of specific acts of sexual conduct on the part of the prosecutrix with his client unless the client had taken the stand. The court reserved its ruling as to whether, if a defendant took the stand and wished to testify to the sexual relations of the prosecutrix with third persons, such would be admissible. It did, however, note the applicability of the *Forshner* case, and denied the offer of proof.[3]

Later in the trial the court allowed evidence of the prosecutrix' reputation for unchastity from several non-party witnesses. Finally, near the end of the trial, petitioner testified. His testimony concerned the circumstances of the night of the alleged criminal activity and pictured the prosecutrix as engaging in acts with all the defendants willingly and without coercion. He said that he did not have intercourse with her, but only oral sex. He did not testify as to any prior sexual relationships between himself and the prosecutrix. Nor did petitioner attempt to testify about specific acts between the prosecutrix and third persons who were not defendants. In cross-examination, a prior conviction for assault with intent to rape was established and various other kinds of impeaching evidence were elicited.

From this record it is clear that, whether or not co-defendant Landry may complain of any violation of his rights, petitioner may not. For, once it had been established that Landry would testify, petitioner, through his counsel, was given full scope in cross-examining the prosecutrix, as well as Landry. Only the *Forshner* rule, barring evidence of specific acts with third parties, was a barrier, and the court had specifically reserved any ruling on its applicability to a testifying defendant.[4] Petitioner was thus not required to take the stand, in violation of his Fifth Amendment privilege, in order to establish his defense of consent, nor in order to exercise his Sixth Amendment right of cross-examination. Indeed, his taking the stand added only his own version of the night's bizarre activities. He could apparently contribute no evidence of prior sexual relations between himself and the prosecutrix.

■ Even though the petition for habeas corpus might in theory have raised issues of constitutional magnitude, *compare Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) *with McGautha v. California*, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), the record affirmatively disproves any basis for them in fact. It is therefore unnecessary to resolve whether an evidentiary hearing before the habeas corpus court was required. *See Townsend v. Sain, supra*, 372 U.S. at 312, 83 S.Ct. 745.[5]

Petitioner also claims a due process violation in the prosecution's alleged suppression of evidence that police officers compelled Kathleen Baker to give false testimony at a pretrial deposition consistent with her sis-

---

**3.** It seems clear to us that the court, whether or not it would allow a defendant who took the stand to testify as to acts of misconduct between the prosecutrix and third parties, saw no basis to allow such evidence to be introduced on behalf of a defendant who did not take the stand.

**4.** In failing to challenge application of the *Forshner* rule to him or to offer evidence barred by it, petitioner waived any constitutional claim he might have had in that regard.

**5.** Petitioner argues in passing that his trial attorney's failure to insure that the record re-

flected facts in support of his claim of a constitutional violation deprived him of the effective assistance of counsel. Even assuming such an omission occurred, it would not, standing alone, turn otherwise adequate representation into ineffectiveness. *See Dunker v. Vinzant*, 505 F.2d 503, 504 (1st Cir. 1974). The record of this case reveals thorough preparation by counsel, *see Rastrom v. Robbins*, 440 F.2d 1251 (1st Cir. 1971), skillful cross-examination, and vigorous assertion of petitioner's interests—adequate representation by any standard. *Compare Moran v. Hogan*, 494 F.2d 1220 (1st Cir. 1974) *with United States v. DeCoster*, 159 U.S. App.D.C. 326, 487 F.2d 1197 (1973).

ter's accusation of rape.[6] Although Baker took an overdose of tranquilizers and was unavailable at trial, by consent of the parties the deposition was not admitted before the jury. We are urged to grant habeas corpus on the ground that Baker would testify at a new trial that her sister had consented to the activities in question, but had gotten "more than she bargained for".

■ After an evidentiary hearing at which Baker and three police officers testified, the district court found that the deposition was not the product of police coercion. There is ample evidentiary support for that conclusion. *See* Fed.R.Civ.P. 52(a). By Baker's own account, she gave the police a statement corroborating her sister's story before she encountered the officer said to have threatened her. Undue police influence, if there was such, thus did not shape Baker's version of the incident.[7]

■ Absent proof of state misconduct, the claim is nothing more than that a witness is prepared to recant. As the district court rightfully noted, such assertions are viewed with considerable skepticism. *See Johnson v. United States*, 291 F.2d 150, 154 (8th Cir. 1961). Moreover, it is by no means clear that they are cognizable on habeas corpus from a state conviction. *See Thompson v. Garrison*, 516 F.2d 986, 988 (4th Cir. 1975). *But see United States ex rel. Sostre v. Festa*, 513 F.2d 1313 (2d Cir. 1975). Even if they are, nothing in the record persuades us to disturb the district court's finding that Baker's testimony would merely have impeached her sister's and would not have caused the jury to reach a different verdict. *See id.* at 1317.

*The judgment of the district court is affirmed.*

---

6. The police are alleged to have threatened to assist in the removal of Baker's child from her custody if she failed to cooperate.

7. The district court found that Baker's reluctance to testify at trial, and thus her extreme measures to avoid doing so, were motivated by fear that her ex-husband would learn of her presence at a party attended by members of a motorcycle gang and seek custody of their young child.