**Cesar VEGA PELEGRINA, Petitioner, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 78–1255.

United States Court of Appeals, First Circuit.

Argued Feb. 5, 1979.

Decided June 25, 1979.

Carlos Perez Olivo, San Juan, P. R., for petitioner, appellant.

Charles E. Fitzwilliam, Asst. U. S. Atty., with whom Julio Morales Sanchez, U. S. Atty., San Juan, P. R., was on brief, for appellee.

* Of the District of Montana, sitting by designation.

1. Such a motion, when based on newly discovered evidence, "may be made only before or within two years after final judgment . . ." Fed.R.Crim.P. 33. Judgment was entered in the district court on September 27, 1974; movant's conviction was affirmed on appeal by our unpublished decision dated June 16, 1976; and the § 2255 motion was filed in March 1977. Since final judgment dates from termination of the appellate process a motion under Rule 33 would have been timely. *United States v. Chisum,* 436 F.2d 645, 646 (9th Cir. 1971); *United States v. Holman,* 436 F.2d 863, 868 n.1 (9th Cir.), *cert. denied,* 402 U.S. 913, 91 S.Ct. 1394, 28 L.Ed.2d 655 (1971); *United States v. Granza,* 427 F.2d 184, 185 n.3 (5th Cir. 1970); *Casias v. United States,* 337 F.2d 354, 356 (10th Cir. 1964); *United States v. Gross,* 446 F.Supp. 948, 952 (D.N.J.1978); 8A *Moore's Federal Practice* ¶ 33.03[2] at 33–16 n.12 (2d ed. 1978).

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and JAMESON, Senior District Judge.*

LEVIN H. CAMPBELL, Circuit Judge.

Vega Pelegrina appeals from the district court's denial of his post-conviction motion made under 28 U.S.C. § 2255. Now on parole, he seeks relief from the conviction of himself and a co-defendant, Jose Rodriguez Caban, on two narcotics counts—a conviction we affirmed by unpublished opinion, *United States v. Pelegrina,* 539 F.2d 702 (1st Cir. 1976). Movant contends he should be granted a new trial (1) because of newly discovered evidence and (2) because the lower court should have considered the results of two polygraph tests when ruling upon the present § 2255 motion.

### 1. *Newly Discovered Evidence*

The newly discovered evidence consists of two recantations, one by government informant Ubaldo Santiago Alonso, who did not testify at movant's trial and one by movant's co-defendant, Rodriguez.

■ We, as did the district court, treat the § 2255 motion as if it were a motion for new trial filed pursuant to Fed.R.Crim.P. 33,[1] and thus we need not decide whether newly discovered evidence is a ground for § 2255 relief.[2]

2. *See United States ex rel. House v. Swope,* 219 F.2d 538, 539 (5th Cir. 1955), *vacated and remanded for consideration in light of new information,* 350 U.S. 945, 76 S.Ct. 324, 100 L.Ed. 824 (1956); *Clark v. United States,* 370 F.Supp. 92, 95 (W.D.Penn.), *aff'd without published opinion,* 506 F.2d 1050 (3d Cir. 1974) (newly discovered evidence, even in the form of a confession of another, is not a ground for § 2255 relief); 8A *Moore's Federal Practice* ¶ 33.02[3] at 33–9 (2d ed. 1978); *cf. Lemire v. McCarthy,* 570 F.2d 17, 21 (1st Cir. 1978) (doubt expressed that recantation, absent state misconduct, is cognizable on a petition for habeas corpus); *Thompson v. Garrison,* 516 F.2d 986, 988 (4th Cir.), *cert. denied,* 423 U.S. 933, 96 S.Ct. 287, 46 L.Ed.2d 263 (1975) (recantation of accomplice, in absence of state's knowing use of false testimony, would not warrant habeas corpus relief); *Shaver v. Ellis,* 255 F.2d 509, 511 (5th Cir. 1958) (newly discovered evidence in form of confession by another does not subject conviction to collateral attack by

The government's informant, Santiago, involved in the drug transaction for which movant and co-defendant were convicted, executed a written statement following the event which is dated October 21, 1971 and which implicates movant and Rodriguez. According to the statement, Santiago and Rodriguez went to movant's bar in order to see one Raul Garay from whom Santiago intended to purchase drugs. Movant informed them that Raul was not there "but if [they] want to buy some stuff, he could sell it to [them]." Santiago informed movant he wanted "the stuff" for someone waiting outside who first required a sample. Movant agreed to sell and later left the bar with Rodriguez in Santiago's car to obtain the sample. When they returned, Santiago exited the bar, received the sample, and gave it to a government agent. Santiago then went inside the bar, gave Rodriguez $30 for the sample which Rodriguez in turn handed to movant. Movant told Rodriguez "to take care of all the details" for the subsequent sale of the heroin and to bring him the money the next day.

Santiago did not testify at movant's trials.[3] A government agent did testify that he had seen movant hand something to a government informant, which the informant afterwards gave the agent and which was determined to be a narcotic.

Santiago testified during the § 2255 hearing that his 10/21/71 statement was incorrect, and that movant had not participated in the drug transaction in any manner. While movant was at his bar the night of the drug deal, Santiago now testified he had no conversation with movant concerning drugs; Rodriguez alone had obtained the sample and had handed it to Santiago, although Rodriguez did that night tell Santiago that the drugs belonged to himself and movant. Santiago stated that he had lied in his written statement in the hope that his activities in implicating movant, whom he inferred from statements made by federal drug agents was a "big one," would be rewarded by the dropping of charges then pending against him or the grant of probation. He acknowledged that no specific promises had been made to him by the government during the time he worked on fourteen or fifteen cases with the Drug Enforcement Administration. He did not previously tell the DEA people his written statement was a lie[4] because he was afraid he would be prosecuted; however, prior to the § 2255 hearing Santiago consulted a lawyer who informed him he could no longer be prosecuted.

Co-defendant Rodriguez testified at movant's and his trials stating, in substance, that neither he nor movant had participated in the drug activities for which they were accused. His present testimony would differ insofar as he now admits his own participation in the drug transaction but asserts movant had no involvement. Rodriguez executed a sworn statement to the latter effect dated July 1, 1976 which was presented to the court on movant's and his motions for reduction of sentence.[5] Rodriguez, in contradiction of both Santiago's testimony and written statement, maintains he never told Santiago to whom the drugs belonged and that they did not belong to movant but to one "Pawpaw."

■ The standard for granting a new trial based on newly discovered evidence is,

habeas corpus); *Figueroa v. Saldana*, 23 F.2d 327, 328 (1st Cir. 1927), *cert. denied*, 277 U.S. 574, 48 S.Ct. 530, 72 L.Ed. 995 (1928) (confession by another affords no basis for habeas corpus relief); *but see United States ex rel. Sostre v. Festa*, 513 F.2d 1313, 1317 (2d Cir.), *cert. denied*, 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 60 (1975) (stating three-prong test in habeas corpus proceeding to determine whether recantation necessitates new trial); *Tropiano v. United States*, 323 F.Supp. 964 (D.Conn. 1971) (allegation of newly discovered evidence considered under a § 2255 petition).

3. Movant's first trial ended in a hung jury.

4. There is no evidence to support the allegation in the § 2255 motion that the government knowingly used the perjured testimony of an informant to convict movant. Apart from the fact that Santiago's testimony was not used at trial, there is no evidence the government knew of the alleged inaccuracies in Santiago's statement.

5. The motions were denied.

"that the evidence must be newly discovered, that it must be material to the issues, that it must be such as to have some effect on the outcome . . . and that the failure to obtain the evidence not be due to a lack of diligence on the part of the defendant."

*In Re United States,* 565 F.2d 173, 176 (1st Cir. 1977); *United States v. Strauss,* 443 F.2d 986, 989 (1st Cir.), *cert. denied,* 404 U.S. 851, 92 S.Ct. 87, 30 L.Ed.2d 90 (1971); *United States v. Street,* 570 F.2d 1 (1st Cir. 1977).

■ The government first argues that the proffered evidence does not qualify as newly discovered. The fact that Santiago's existence was known to movant [6] does not, however, indicate that Santiago's present account of the drug transaction is not newly discovered evidence; Santiago had indicated to Rodriguez that he would not testify in the defendants' behalf at trial and he refused to contradict his written statement prior to the expiration of the statute of limitations. Hence, the failure to obtain Santiago's favorable testimony at trial was not due to movant's lack of diligence. We take a similar view of Rodriguez's revised account of the pertinent events. There remains the question whether said evidence is material and whether it would have the requisite effect on the outcome.

As we have noted before, there is a variance among the circuits in the tests applied for determining whether newly discovered evidence warrants a new trial. The majority rule requires that the evidence "probably produce acquittal," *Johnson v. United States,* 32 F.2d 127, 130 (8th Cir. 1929), while the somewhat more lenient minority rule grants a new trial if the court is reasonably well satisfied that testimony given by a material witness is false and that without it the jury might have reached a different conclusion, *Larrison v. United States,* 24 F.2d 82, 87–88 (7th Cir. 1928);

*Strauss v. United States,* 443 F.2d at 989; *In Re United States,* 565 F.2d at 177 n.3; *United States v. Street,* 570 F.2d at 2–3.

The *Larrison* test is not applicable here: Santiago did not testify at movant's trial, and Rodriguez's present version with respect to movant's involvement does not differ materially from his trial testimony.

■ We agree with the district court that the proffered newly discovered evidence would probably not produce an acquittal. As the district court concluded, Rodriguez's revised account adds little of exculpatory value to his trial testimony. Movant, however, argues that Rodriguez, by admitting his own guilt while adhering to movant's innocence would make a more credible witness were a new trial granted. Just as impeaching evidence is generally treated as immaterial for purposes of a Rule 33 motion, *Mesarosh v. United States,* 352 U.S. 1, 9, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956) (dicta); *In re United States,* 565 F.2d at 177; *Corey v. United States,* 346 F.2d 65, 67 (1st Cir. 1965); 2 Wright *Federal Practice and Procedure* § 557 at 522 (1969), so too should Rodriguez's questionably enhanced veracity be regarded.

Santiago's testimony fares little better. Recantations are viewed with considerable skepticism. *United States v. DiCarlo,* 575 F.2d 952, 961 (1st Cir.), *cert. denied,* 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 129 (1978); *Lemire v. McCarthy,* 570 F.2d 17, 21 (1st Cir. 1978); *Thompson v. Garrison,* 516 F.2d 986, 988 (4th Cir. 1975); *Johnson v. United States,* 291 F.2d 150, 154 (8th Cir. 1961). The district court, more familiar with the entire record than are we,[7] noted that the jury found movant guilty basically on the testimony of two government agents and circumstantial evidence such as movant's flight following arrest. Outlining the factors which cast suspicion on Santiago's credibility, his prior inconsistent written statement, the six-year delay before

---

6. The district court stated in its opinion that the government had complied with its duty to provide the name and address of its informant to plaintiff and there is no evidence to the contrary. We see no basis for movant's claim that exculpatory evidence was withheld by the government.

7. The judge below also presided at the trial at which movant was found guilty.

recantation,[8] and the inconsistencies in testimony, the court concluded that Santiago's testimony would not result in acquittal. We do not disagree. It was primarily the district court's function to appraise the new evidence, *Grace v. Butterworth,* 586 F.2d 878, 881 (1st Cir. 1978); *United States v. Zannino,* 468 F.2d 1299, 1303 (1st Cir. 1972), *cert. denied,* 410 U.S. 954, 93 S.Ct. 1419, 35 L.Ed.2d 687 (1973), and we see no reason to disturb its conclusion. *See United States v. Cousins,* 429 F.2d 1271, 1272 (9th Cir.), *cert. denied,* 400 U.S. 904, 91 S.Ct. 143, 27 L.Ed.2d 141 (1970) (refusal to disturb district court's implicit determination that newly discovered evidence in the form of admitted drug trafficker's testimony in contradiction of a government agent's trial testimony was unlikely to change outcome of trial), and *Lemire v. McCarthy,* 570 F.2d at 21, where we did not disturb the district court's finding, in the context of a rape case, that a non-testifying prosecution witness's recantation that the prosecutrix had consented to defendant's activities would merely have impeached the prosecutrix's testimony and not have caused the jury to reach a different result.

### 2. *Polygraph*

■ Movant argues that the district court should have considered the results of two polygraph tests in ruling on his § 2255 motion. One of the tests was allegedly administered to Rodriguez, who testified that his lawyer had submitted him to a lie detector test. Rodriguez never explicitly testified to the results of the test, but it is possible to infer from his testimony that the results were favorable to him. The second test occurred on August 7, 1978, after the court had denied the § 2255 motion. This was a so-called "audio stress analysis interview" in which movant participated. The results of this interview were submitted to the court by motion filed September 8, 1978, which asked the court to reconsider its earlier denial of the § 2255 motion. Reconsideration was denied and movant did not thereafter appeal from the court's refusal to reconsider.

One threshold difficulty with the argument that the court erred in not considering these tests is that the movant did not offer the results of either polygraph test at the § 2255 hearing. Beyond this—and leaving aside the vexing issue of admissibility—a more basic difficulty is that the polygraph evidence does no more than support the reliability of Rodriguez's new testimony. Since we have already held that his recantation, even taken at face value, would not entitle movant to a new trial, there was no requirement that the district court consider the polygraph results. *Cf. McCroskey v. United States,* 339 F.2d 895, 897 (8th Cir. 1965) (results of polygraph performed on defendant do not qualify as newly discovered evidence since test could have been performed prior to trial).

*Affirmed.*

---

**8.** Thus, Santiago could no longer be prosecuted. 18 U.S.C. § 3282.