Louis GRECO, Petitioner,

v.

Hank WORKMAN, Respondent.

Civ. A. No. 79–885–C.

United States District Court,
D. Massachusetts.

Dec. 13, 1979.

John Cavicchi, Boston, Mass., for petitioner.

Robert V. Greco, Asst. Atty. Gen., Boston, Mass., for respondent.

### MEMORANDUM

CAFFREY, Chief Judge.

This matter came before the court on the Memorandum, Finding and Recommendation of Magistrate Princi relating to Lewis Greco's petition for writ of habeas corpus and request for an evidentiary hearing and the Commonwealth's motion to dismiss the petition. The Magistrate recommends that no evidentiary hearing be held, that the motion to dismiss be denied and that the matter be determined on the basis of the documents in the case file. For the reasons set forth below, I rule that no evidentiary hearing is needed and that the petition should be dismissed.

In 1968, after a jury trial in the Massachusetts Superior Court, petitioner, Louis. Greco was found guilty of the murder of Edward Deegan and conspiracy to murder both Deegan and one Anthony Stathopoulos. That conviction was affirmed by the Supreme Judicial Court in 1970, *Commonwealth v. French*, 357 Mass. 356, 259 N.E.2d 195. At petitioner's trial the chief prosecution witness was Joseph Barboza a/k/a Joseph Baron, an admitted accomplice who testified that he had enlisted the petitioner's aid to accomplish the murder of Edward Deegan. Barboza's credibility was buttressed by the testimony of John Fitzgerald. Both the petitioner and his co-defendant French testified that the petitioner was in Florida in March, 1965 at the time of the murder.[1]

Barboza's testimony was vital to the government's case and his credibility was a key issue to be weighed by the jury. As discussed in *Commonwealth v. French, supra* Baron was a highly vulnerable witness. Not only was his long criminal record brought to the jury's attention but during the more than six days of cross examination defense counsel also sought to expose any possible motives or incentives which might have further undermined the impact of his testimony. The attacks on Barboza's credibility notwithstanding, the jury returned guilty verdicts against the petitioner.

In August, 1970, three months after his conviction had been affirmed petitioner filed his first motion for new trial in the Massachusetts Superior Court. That motion was denied in November of the same year by the Honorable Felix Forte who had been the trial judge. No appeal was perfected by the petitioner.[2]

On May 1, 1974 petitioner filed his second motion for new trial in the Superior Court. Among the materials supplied by the petitioner to support that motion were:

1. A thorough discussion of the evidence presented at the trial may be found in the Supreme Judicial Court's opinion in *Commonwealth v. French, supra.*

2. The appeals of two of petitioner's co-defendants were perfected and the Supreme Judicial Court of Massachusetts affirmed the denial of that motion. *Commonwealth v. Casseso*, 360 Mass. 570, 276 N.E.2d 698 (1971).

(1) Affidavit of Joseph Southwood stating that Barboza had recanted and contradicted his trial testimony

(2) Affidavit of F. Lee Bailey which was to be submitted to the court in camera

(3) Results of a 1967 polygraph test tending to show that Greco was truthful when he denied participation in the Deegan murder

That motion was denied by the Honorable James C. Roy on June 3, 1974. No appeal was perfected.

In 1975 petitioner petitioned this court for a writ of habeas corpus. The Honorable Walter Jay Skinner ruled that the petitioner's trial satisfied constitutional requirements and dismissed the petition. *Grieco v. Meachum*, Misc. Civil No. 74–3–S (D.Mass. July 10, 1975). That dismissal was upheld by the Court of Appeals. *Grieco v. Meachum*, 533 F.2d 713 (1st Cir.), *cert. denied sub nom. Cassesso v. Meachum*, 429 U.S. 858, 97 S.Ct. 158, 50 L.Ed.2d 135 (1976).

In 1978 petitioner filed a third motion for new trial in the Superior Court asserting that it appeared from newly discovered evidence that justice may not have been done and thus that he was entitled to a new trial.

That evidence proffered by the petitioner in the form of affidavits consisted of:

*Polygraph Evidence*

Results of polygraph tests taken in 1967 and 1978 which allegedly establish that petitioner was telling the truth when he testified that he was not involved in the Deegan murder.

*Other Alibi Evidence*

Affidavit of Barbara Brown alleging that petitioner was in Florida at the time of the murder.

*Evidence That Fitzgerald Testified Falsely and Later Recanted His Testimony*

Affidavit of Alfred Farese in which he (a) contradicts Fitzgerald's testimony and (b) alleges that Fitzgerald told him that "he

was going to clear the guy with the gimpy leg because he was innocent" and that Farese believed that Fitzgerald was referring to the petitioner.

*Evidence That Barboza Later Recanted His Testimony*

Affidavits of James Southwood and Francis L. Bailey each alleging that after the trial Barboza recanted his testimony about Greco's involvement in the murder.

In response to petitioner's third motion for a new trial the Assistant District Attorney filed the affidavit of United States Attorney Edward Harrington in which Mr. Harrington alleges that Barboza told him that his testimony in the Deegan murder case had been truthful, and that his attorney F. Lee Bailey had made him sign an affidavit [3] in which he stated that he was going to recant his testimony, and that in return for signing the affidavit "they" had sent money to his wife. Barboza is now deceased.

Petitioner's third motion for new trial was denied by the Honorable Joseph Ford in November, 1978 without an evidentiary hearing after Judge Ford's consideration of "the records, briefs and arguments of counsel." Petitioner's motion for leave to appeal the denial was denied by a single justice of the Supreme Judicial Court (Honorable Robert Braucher) in November 1978. It is agreed between the parties that the petitioner has exhausted his State remedies. Petitioner seeks an evidentiary hearing in this court as to the constitutionality of his confinement and a determination by this court on the basis of evidence to be presented at that hearing that a new trial is warranted.

The Commonwealth has filed a motion to dismiss [4] the instant petition arguing that the petitioner cannot challenge his 1968 conviction on the ground that the trial court improperly denied his motion for a new trial, that no constitutional issue is presented by the petition and that the peti-

---

3. Barboza's affidavit was considered in petitioner's first motion for a new trial.

4. Petitioner filed a motion to strike government's motion to dismiss. That motion is denied.

tioner has failed to state a claim upon which relief may be granted.

■ It is clearly established that a district court is required to take additional evidence on a petition for writ of habeas corpus only if the petitioner's allegations establish a prima facie case of constitutional error and the relevant facts were not reliably determined by the state court. *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *Lemire v. McCarthy*, 570 F.2d 17 (1st Cir. 1978). The test to be applied is whether once assuming petitioner's allegations to be true, he would be entitled to relief. *Machibroda v. United States*, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); *De Vincent v. United States*, 602 F.2d 1006 (1st Cir. 1979); *Miller v. United States*, 564 F.2d 103 (1st Cir. 1977), *cert. denied* 435 U.S. 931, 98 S.Ct. 1504, 55 L.Ed.2d 528 (1978).

■ For the reasons set forth below, I rule that petitioner's allegations even as supported by affidavits do not establish a prima facie case of constitutional error and that even if he were to produce oral testimony confirming the statements set forth in the affidavits and prove all of the allegations contained in his petition he would not be entitled to federal habeas corpus relief. Thus an evidentiary hearing before this court would serve no purpose.

*Polygraph Evidence, Alibi Evidence and Evidence Contradicting Fitzgerald's Testimony*

■ The existence of newly discovered evidence relevant to the petitioner's guilt or innocence is not a ground for habeas corpus relief unless it bears in some way upon the constitutionality of the petitioner's detention. *Townsend v. Sain, supra* 372 U.S. at 317, 83 S.Ct. 745.

Even assuming that the evidence outlined by the petitioner (excluding for the moment petitioner's allegations that Barboza and Fitzgerald later recanted their testimony) is "newly discovered," I rule that this evidence is merely cumulative and tends only to corroborate or impeach the testimony of a witness and thus it does not undermine the constitutional validity of the conviction.

■ Under the law of Massachusetts, even polygraph evidence which meets the stringent admissibility standards set forth in *Commonwealth v. A Juvenile*, 365 Mass. 421, 313 N.E.2d 120 (1974) [5] may be admitted solely on the issue of a defendant's credibility. *Commonwealth v. Moynihan*, —— Mass. ——, 381 N.E.2d 575; *Commonwealth v. Vitello*, —— Mass. ——, 381 N.E.2d 582.

Similarly Brown's testimony that petitioner was in Florida at the time of the murder would be cumulative and do no more than corroborate the testimony of the petitioner and his co-defendant French.

As to that portion of Farese's affidavit which contradicts some portions of Fitzgerald's, such evidence would at most tend to impeach Fitzgerald's credibility as to certain aspects of his testimony. I rule therefore that such credibility evidence has no bearing on the constitutionality of petitioner's detention and cannot provide the basis for habeas corpus relief.

### EVIDENCE OF RECANTATION OF WITNESSES

■ In this memorandum petitioner argues that the prosecution knowingly used perjured testimony to convict him and states that such knowledge is established in his "pleadings." However, the only factual allegation in the petition which relates to the prosecutor is an allegation that the Massachusetts authorities had the results of the petitioner's 1967 polygraph examination in their possession when they prosecuted him. As discussed above the results of polygraph tests are not independent evidence of guilt or innocence but are merely evidence of a defendant's credibility to be weighed by a jury with all other available credibility evidence. Therefore even if the prosecutor knew of the test results, it does not follow that he knew that Greco was innocent or that he knew that Barboza was perjuring himself.

5. Judge Ford has ruled that neither polygraph test met those standards of admissibility.

Even were we to look beyond the petition and consider the affidavits, nowhere is there any mention of state misconduct. Bailey alleges in his affidavit only that Barboza claimed to have implicated Greco because of a "personal grudge." Similarly Barboza's alleged remarks to Southwood contained no information regarding prosecutional misconduct. As to Fitzgerald's alleged recantation, the bare statement purportedly made by Fitzgerald to Farese was that "he was going to clear the guy with the gimpy leg" without mentioning Greco by name. Fitzgerald's alleged remark is no evidence of government misconduct. Indeed it is not even evidence that Fitzgerald perjured himself at petitioner's trial.

Petitioner states in his memorandum that if provided with an opportunity to present his evidence at a hearing, he would call Bailey, Southwood and Farese to testify.[6] There is no affidavit from Fitzgerald indicating that he is willing to take the stand and recant his testimony while under oath. Barboza is now deceased. Clearly therefore, petitioner has not suggested the existence of any evidence available for presentation on the issue of prosecutorial misconduct.

Thus even if the court ignores the government's affidavit that Barboza later recanted his recantation and accepts as true all information set forth in petitioner's affidavits, it is left only with the assertions (1) that Barboza made two unsworn statements in which he indicated that Greco was innocent, and (2) that Fitzgerald made an unsworn statement that he was going to clear "the guy with the gimpy leg."

There is some disagreement among the circuits as to whether, absent a showing of state misconduct, assertions that a witness is prepared to recant his testimony are cognizable in a federal habeas corpus proceeding. Cf. Thompson v. Garrison, 516 F.2d 986, 988 (4th Cir.), cert. denied, 423 U.S. 933, 96 S.Ct. 287, 46 L.Ed.2d 263 (1975) (where the court held that a habeas corpus

petitioner must show that a government official knew that the testimony in question was false) and United States ex rel. Sostre v. Festa, 513 F.2d 1313 (2d Cir.), cert. denied, 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 60 (1975) (where in the absence of any evidence of state misconduct the court held that the key issue for consideration in the habeas corpus proceeding was the credibility of the testimony recanting the trial testimony.)[7]

■ For the reasons set forth below I rule that the reliance of the fourth circuit on Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); Hysler v. Florida, 315 U.S. 411, 62 S.Ct. 688, 86 L.Ed. 932 (1942), and Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935) is well placed and that a petitioner seeking federal habeas corpus relief on the basis of recanted testimony must assert that there was misconduct on the part of the state.

The Supreme Court has ruled that a prosecutor who obtains a conviction through the use of testimony which he knows to be false deprives an accused of liberty without due process of law, regardless of whether the false testimony was obtained through the active conduct of the prosecutor, Hysler v. Florida, supra; Mooney v. Holohan, supra or was unsolicited Napue v. Illinois, supra; Alcorta v. Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957).

However in Hysler v. Florida, supra the court went on to say that a petitioner "cannot, of course, contend that the mere recantation of testimony is in itself grounds for invoking the Due Process Clause against a conviction."

Chief Judge Magruder quoted that exact language in a concurring opinion to Coggins v. O'Brien, 188 F.2d 130, 141 (1st Cir. 1951) (Magruder, C. J., concurring) and in White v. Hancock, 355 F.2d 262, 263–264 (1st Cir. 1966) the court ruled that "[p]erjury itself, even if established, does not involve constitutional rights." Thus no issue of constitu-

---

6. The names of other potential witnesses are not mentioned here simply because their testimony would not be relevant to this issue.

7. Although the Court of Appeals for the first circuit found it unnecessary to rule in this particular issue in Lemire v. McCarthy, supra at 21, it pointed out these differing opinions among the circuits.

tional magnitude cognizable in a federal habeas corpus proceeding is raised by the mere recantation of testimony.

I further rule that even if a habeas petitioner is not required to show state misconduct, petitioner's assertions fail. Assertions that a witness is prepared to take the stand and recant his testimony are regarded with considerable skepticism *Pelegrina v. United States*, 601 F.2d 18 (1st Cir. 1979); *United States v. DiCarlo*, 575 F.2d 952, 961 (1st Cir.) *cert. denied*, 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 129 (1978); *Lemire v. McCarthy, supra*. In the case at bar the assertions of the petitioner do not reach even that dubious level. In a situation where the proposed witness is in fact the person who is recanting his earlier testimony the court should at least have an opportunity to observe the demeanor of the witness on the stand, under oath, and, subject to cross examination. In the instant case no such opportunity exists. Thus if the former situation is to be regarded with considerable skepticism surely the present one is totally unreliable.

I rule therefore that the petitioner's assertions do not establish a prima facie case of constitutional error and that no evidentiary hearing need be afforded him, and that the petition for writ of habeas corpus should be dismissed.

Order accordingly.