UNITED STATES of America

v.

**Shecham LAFAYETTE, Appellant,**

UNITED STATES of America

v.

**Raymond O. LEWIS, Appellant,**

UNITED STATES of America

v.

**Derrick TOWNSEND, Appellant.**

**Nos. 91–3187, 91–3188, 91–3189.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 17, 1992.

Decided Jan. 29, 1993.

Richard S. Stern (appointed by this Court), with whom Jensen E. Barber (appointed by this Court) and Joseph R. Conte, Washington, DC (appointed by this Court) were on the joint brief, for appellants.

Peter H. White, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Elizabeth Trosman, and Gregory E. Jackson, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before EDWARDS, BUCKLEY, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Appellants, all previously convicted of offenses arising from a major drug conspiracy, appeal from the District Court's denial of their motions for a new trial. They assign as error the District Court's denial of discovery motions directed toward the personnel files of officers who participated in the investigation and/or trial of the cases against them. Appellants assert that the files contained "newly discovered evidence" entitling them to new trials under Fed.R.Crim.P. 33. The District Court ruled that the information sought by defendants would in each instance have been either inadmissible, merely impeaching, or not material to the outcome of the trial. We hold that the District Court neither abused its discretion nor misapplied law in denying appellants' motions and therefore affirm the order of the District Court.

## I. BACKGROUND

In November 1988, Shecham Lafayette, Raymond O. Lewis and Derrick Townsend ("appellants") were convicted in a jury trial of various drug trafficking and related offenses arising out of a major cocaine and marijuana distribution operation. Lafayette was sentenced to 410 months' incarceration; Townsend and Lewis to 450 months each, all sentences to be followed by five years of supervised release. Each appellant was fined $600,000 and assessed $450. This Court affirmed their convictions and sentences in an unpublished opinion. *United States v. Lafayette, et al.,* 896 F.2d 599 (D.C.Cir.1990).

Before trial, appellants made a general request for exculpatory evidence under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The prosecution did not furnish any evidence concerning the four officers whose files appellants now seek. Beginning in July 1990, approximately sixteen months after their convictions had been upheld by this Court, appellants filed a series of discovery motions, subsidiary to motions for a new trial, in which they sought to discover and inspect the personnel files of D.C. Metropolitan Police Officer Lugenia Dorothy King, United States Park Police Officer Gerald T. Holman, and New York Police Department Detectives William Bishop and Arthur Semioli. Appellants' new trial motions were based on Rule 33 of the Federal Rules of Criminal Procedure, which allows for a new

trial "in the interest of justice" on the "ground of newly discovered evidence." Fed.R.Crim.P. 33. The alleged "newly discovered evidence" involved separate misconduct by the individual officers whose personnel files appellants sought.

As to King, appellants had learned through public disclosure that she had tested positive for drug use in August 1989. As to Holman, they allege that he was dismissed in September 1990, for misuse of funds and misconduct. As to Bishop and Semioli, appellants' submissions are remarkably vague about the grounds on which they seek personnel files. Before us, they assert that the detectives "were believed to be suspended for mishandling of evidence, theft of drug and drug money evidence, and so on." Appellants' Br. 20. In District Court, their motion for discovery of the personnel files alleged that "Officer Bishop has had adverse personnel actions taken against him for serious misconduct." Appellants' Motion for Discovery and Inspection in Aid of Post–Conviction Motions, February 19, 1991, at 2, *reprinted in* Addendum to Brief for Appellants, Appendix A ("App. A."). As to Semioli, appellants' discovery motion merely asserts that his records are sought "on the same grounds." Defendant Lewis's Motion for Discovery in Aid of Post–Conviction Motions, March 5, 1991, at 1, *reprinted in* App. F.

District Judge Thomas Hogan dealt with the motions according to their differing implications. He required the government to explain why Officer King was not subjected to a drug test in 1988, and to submit any information indicating that King was using drugs at the time she made undercover buys from appellants or at the time of trial. He also required the government to file an affidavit explaining the United States Attorney's Office policy regarding the dismissal of cases in which Officer King was involved. The government filed responsive pleadings and the requested affidavit, which satisfied the trial court that appellants did not need further discovery regarding Officer King.

On February 11, 1991, the court ordered the government to obtain and produce the Park Police disciplinary file on Officer Holman for *in camera* review. After reviewing the government's responsive submissions and Officer Holman's file, the court denied appellants' motion for discovery regarding Officer Holman during a February 28, 1991, status hearing. The court found that Officer Holman's file reflected that several complaints had been filed against him as a result of his conduct as a police officer—specifically, his unauthorized use of a government vehicle, untruthful statements about a doctor's visit, inaccurate statements about auto accidents, and his superiors' negative opinions of his truthfulness and cooperativeness. The court noted that all the serious adverse actions referenced in Officer Holman's record, however, had occurred after the trial in this case.

At the February 28 status hearing, counsel for Townsend admitted that he only had "slight" information that Officer Bishop had been involved in "some serious trouble in New York." Hearing on Appellants' Motion for a New Trial, February 28, 1991, at 5, *reprinted in* Record Material for Appellees, Section E. The government inquired of the Brooklyn District Attorney's Office as to whether either Bishop or Semioli had been investigated or charged with any criminal activity during the relevant time periods. After the government informed the trial court that it had obtained a negative answer to its inquiry, the trial court denied appellants' discovery motion during a March 27, 1991, status conference.

All this having been done, on May 23, 1991, the trial court denied appellants' motions for new trials, stating its reasons in a memorandum opinion. The court expressly found that appellants (1) had not offered "one iota of evidence that could have been used" in the trial; (2) "have absolutely no evidence" that King was using cocaine either at the time of her testimony or the undercover purchase; (3) had "offered no evidence of misconduct on the part of ... Holman that could have been used" for impeachment of his trial testimony; and (4) "in short ... offered nothing that could be considered material, much less relevant, to

their trial." The court further concluded that:

> [E]ven if defendants had produced evidence that the officers engaged in misconduct during the relevant time period, based on the court's recollection of the evidence presented at defendants' trial, this "newly discovered evidence" would not have affected the outcome.

May 23, 1991 Mem.Op. at 5–6 *reprinted in* App. L.

Because we completely agree, we affirm the decision of the District Court.

## II. DISCUSSION

■ The trial court, in deciding the motion for new trial, follows the standard set forth by us in *Thompson v. United States*, 188 F.2d 652 (D.C.Cir.1951), and frequently recited since. That is, the court should grant a new trial only when the following five conditions are met:

> (1) the evidence must have been discovered since the trial; (2) the party seeking the new trial must show diligence in the attempt to procure the newly discovered evidence; (3) the evidence relied on must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) of such nature that in a new trial it would probably produce an acquittal.

*Id.* at 653; accord *United States v. Sensi*, 879 F.2d 888, 901 (D.C.Cir.1989); *United States v. Kelly*, 790 F.2d 130, 133 (D.C.Cir. 1986); *United States v. Mangieri*, 694 F.2d 1270, 1285 (D.C.Cir.1982); *inter alia.*

■ In reviewing the District Court's decision on a new trial motion, we apply a deferential standard, and will reverse only if the court abused its discretion or misapplied the law. *See, e.g., Kelly*, 790 F.2d at 133. In the present case, we would likely affirm under any standard.

■ As to Officer King's drug use, our reasons for upholding the District Court are multifold. First, this is not newly discovered evidence. In general, to justify a new trial, "newly discovered evidence" must have been in existence at the time of trial. Events and transactions occurring after the trial obviously could not have been the subject of testimony at the trial. *See United States v. Bolden*, 355 F.2d 453, 461 (7th Cir.1966) (conviction of government witness occurring after trial of movant could not constitute new evidence upon which new trial could be based), *cert. denied*, 384 U.S. 1012, 86 S.Ct. 1919, 16 L.Ed.2d 1018 (1966). The affidavit and record before the district judge disclosed that Officer King had tested negative for controlled substances on July 17, 1987. In August of 1989, ten months after the trial of appellants, she tested positive for a controlled substance in her bloodstream. Appellants therefore argue that they should be granted a new trial based on an occurrence almost a year after the close of their trial. We cannot say that the District Court misapplied the law or otherwise erred in refusing the motion on that basis alone.

■ Moreover, the affidavit furnished by the United States Attorney's Office and the balance of the records before the court disclosed that the United States Attorney's Office had moved for dismissal of those cases in which King's testimony was required to prove an essential element of the case *and* either her testimony or the events about which she testified, or both, occurred between her last negative drug test and the positive test of August 1989. The cases in which King was involved but in which the defendant pleaded guilty were not dismissed. Nor were those in which King testified during the drug test window, but in which the United States Attorney's Office determined that her testimony was not essential to prove an element of the offense charged. The United States contends that the present case falls in this latter category. Judge Hogan agreed, and so do we. Without rehashing the voluminous evidence in a several-day-long trial, suffice it to say that King's limited testimony concerning a single transaction not involving direct participation of any of appellants falls far short of any definition of "essential." In so holding, we act consistently with the third *Thompson* condition that "the evidence relied on must not be

merely cumulative or impeaching," 188 F.2d at 653, and the fifth *Thompson* factor, which requires that the evidence be "of such nature that in a new trial it would probably produce an acquittal." *Id.* Impeachment of a witness who testified as to a peripheral fact as a part of a substantial and massive government case can hardly be said to meet that standard. Again, we uphold the District Court's determination that it did not.

■ As to Holman, the District Court's ruling is similar, and so is ours. Indeed, it is questionable whether the appellants have presented anything that could even be used as impeachment evidence as to Holman, much less that they have established a right to discover the contents of his personnel file in a fishing expedition for impeachment testimony. Holman did testify to undercover buys he made from confederates of appellants. However, both the confederates from whom he made the purchases testified at length as to the same transactions and as to the narcotics operations of appellants. As Judge Hogan stated at one of the several motions hearings conducted, Holman's testimony was relevant, but mainly related to "getting other individuals, then cooperating government witnesses, who then testified to the extensive drug operation." Hearing on Appellants' Motion for a New Trial, February 28, 1991, at 12–13. Holman's testimony was "really only introductory testimony." *Id.* at 21. The trial court obviously did not abuse its discretion or act contrary to law in finding that any evidence of adverse actions or prior misconduct in Holman's personnel file would be at most impeaching and not likely to result in a not guilty verdict so that again, criteria (3) and (5) of *Thompson* are not met.

Furthermore, we agree with the trial court that the evidence would be of doubtful admissibility even for impeachment. In the first place, according to the District Court's review of the file, all the more significant adverse actions referenced occurred after trial. *Id.* at 17–18. Obviously, these could not have been used for impeachment. Even any events occurring before trial would be of doubtful admissibility. Although 608(b) of the Federal Rules of Evidence does state that specific instances of misconduct may be admissible to impeach a witness, that rule does not require or imply that every negative bit of evidence existing concerning a witness may be dragged into a case no matter how remote or minor the alleged misconduct. We again cannot determine that the trial court either abused its discretion or acted contrary to law.

■ Finally, as to the New York officers, appellants offer virtually nothing. To state appellants' proposition is to give it proper perspective. They contend that the trial court, in a proceeding seeking a new trial, erred by not allowing discovery of the personnel files of two police officers, neither of whom testified at the original trial. Both were involved in the investigation, and there is a vague reference in appellants' brief to the use of Bishop's notes by another officer in the trial, and that Semioli testified at a suppression hearing. It simply cannot be the case that nothing else appearing, a district judge has committed reversible error in denying convicted defendants seeking a new trial the right to rummage around in the personnel files of officers who participated in the investigation but did not testify at the original trial.

We are especially unconvinced by appellants' argument as to these two officers, as nothing in appellants' brief informs us why they have any reason to believe that the personnel files would provide any useful evidence whatsoever. The closest they come is the unsupported statement, "Detectives Bishop and Semioli were believed to be suspended or dismissed as a result of misuse of evidence." Appellants' Br. at 34. Appellants do not tell us by whom this is believed, nor why this unnamed believer adheres to that faith. Were we to grant the relief sought in this case on this basis, the potential for mischief would be boundless. Any dissatisfied defendant, any time after his conviction, would have a right to prowl through the personal history, including confidential records, of any witness against him simply by informing his attor-

ney that "it is believed that" something detrimental might be out there somewhere. The effect upon the finality of judgments, not to mention the overloaded calendars of district judges and the personnel files of already harassed officers, defies imagination.

In short, we find no merit to this allegation.

### III. CONCLUSION

For the reasons set forth above, we affirm the judgment of the District Court.