**UNITED STATES of America,
Appellee,**

v.

**Tyrone W. GLOSTER, Appellant.**

**No. 98–3049.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 18, 1999.

Decided Aug. 10, 1999.

---

Damien J. Marshall, Student Counsel, argued the cause for appellant. With him on the briefs were Steven H. Goldblatt, appointed by the court, Catherine E. Lhamon, Supervisory Attorney, and Alexis W. Martin, Student Counsel.

Barton S. Aronson, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were Wilma A. Lewis, U.S. Attorney, and John R. Fisher, Thomas J. Tourish, Jr., and Sima Sarrafan, Assistant U.S. Attorneys.

Before: WILLIAMS, SENTELLE and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

On the night of September 18, 1996, Tyrone Gloster was sitting on the steps of a residential building, drinking with a number of other men. Police officers on routine patrol, having previously received complaints regarding loitering and narcotics activity from the owner of a nearby building, stopped to investigate. The officers asked Gloster to stand. When he did, they discovered a loaded semi-automatic handgun on the spot where he had been sitting. Gloster was immediately arrested, and was subsequently convicted of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1).

Gloster appeals his conviction on two grounds. First, he contends that the district court improperly denied his motion to exclude evidence of the ammunition found in the gun. Second, he contends that the district court improperly denied his motion for a new trial based on newly discovered evidence. Finding no abuse of discretion by the trial judge, we affirm Gloster's conviction.

## I

Gloster was initially charged with two violations of 18 U.S.C. § 922(g)(1): one for possessing the firearm and one for possessing its ammunition. Before trial, the district court ordered the government to proceed on one count only. *See generally United States v. Clark*, 184 F.3d 858, 871 (D.C.Cir.1999) (holding that possession of loaded firearm constitutes single offense). The government elected to proceed on the gun charge, and the ammunition count was dismissed. Defense counsel then sought to exclude from trial any evidence that the gun was loaded, arguing that it was irrelevant and unduly prejudicial under Federal Rule of Evidence 403. The district court denied the motion.

At trial, the police officers testified that when they arrived at the building, four men were on the steps. All were standing except Gloster, who was sitting on the top step. Officer Ernest Grant asked the four to show their hands "for safety reasons." 10/24/97 Tr. at 25. All complied, but Gloster remained seated. Grant then asked Gloster to stand. Gloster, said Officer Grant, "seemed to hesitate[,] as if he didn't want to stand up." *Id.* at 98. When he finally did stand, the officers saw that Gloster had been sitting "on top of" the gun. *Id.* at 100; *see id.* at 98 ("The gun was directly underneath his buttocks."); *see also id.* at 52–53, 69, 72. Both the gun and the ammunition were entered into evidence, the ammunition over defense counsel's objection that it was "cumulative." *Id.* at 42–43.

Prior to the presentation of defendant's case, Gloster obtained a written statement from a witness, Gary Riddick, who was the registered owner of the gun. Riddick said that he had been with Gloster and the others before the police arrived, but had left to go to the bathroom, placing the gun "near Mr. Gloster on the top stair."

10/27/97 Tr. at 97. At trial, however, Riddick refused to testify, asserting his Fifth Amendment privilege against self-incrimination. The district court appointed an attorney for Riddick, held a hearing, and concluded that Riddick had a good faith basis for asserting the privilege. The court then admitted Riddick's written statement into evidence as a statement against his penal interest, pursuant to Federal Rule of Evidence 804(b)(3). Gloster did not testify.

The jury found Gloster guilty as charged. Two months later he moved for a new trial under Federal Rule of Criminal Procedure 33, on the ground of newly discovered evidence. The motion advised the court that Riddick was now willing to testify, and attached a letter from Riddick discussing the events of the night of September 18, 1996. Following a hearing, the district court denied the motion, finding that Riddick's proposed testimony was not newly discovered evidence, that it was "not significantly different from the statement" admitted at trial and therefore cumulative, and that the evidence was not "of such a nature, given what the jury did have before it," that it would "probably produce an acquittal." 3/6/98 Tr. at 39–40.

## II

■ Gloster contends that the admission of the ammunition and of the testimony that the gun was loaded was error because the evidence was more prejudicial than probative under Federal Rule of Evidence 403.[1] We review such claims solely to determine whether the district court abused its discretion. *United States v. Gartmon*, 146 F.3d 1015, 1020 (D.C.Cir. 1998). We find no such abuse here.

■ Gloster's first argument is that the fact that the gun was loaded was "not relevant to any matter properly provable to the court." Def. Br. at 24. We dis-

---

1. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." FED.R.EVID. 403.

agree. Under the Federal Rules, " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED.R.EVID. 401; *see United States v. Latney,* 108 F.3d 1446, 1449 (D.C.Cir.1997). Gloster's defense was that the gun was Riddick's, that Riddick had left it unattended on the steps of the building while he went to the bathroom, and hence that it was not within Gloster's possession. The fact that the gun was loaded and therefore dangerous made it substantially less probable that Riddick had simply left it unattended, and more probable either that he left it in the possession of Gloster or that Gloster had it in the first place. These were facts "of consequence to the determination of the action," and the evidence was therefore relevant within the meaning of Rule 401.

But, Gloster argues, the district court admitted evidence of the ammunition before Riddick's statement was read to the jury, and hence before it became relevant. The fact that the gun was loaded, however, was relevant regardless whether there was a statement from Riddick. At a minimum, it was relevant to support the government's claim that Gloster possessed the gun—by negating speculation that it may have belonged to someone else, whether that "someone" was Riddick or not. Indeed, while the defendant's opening statement did not mention Riddick by name, it set forth the defense's theory that someone other than Gloster put the gun on the steps. 10/24/97 Tr. at 20 ("[T]he gun that the government is now charging Mr. Gloster with having possessed that night belonged to someone else. He was the one who put that gun on the steps, not Mr. Gloster."). The Federal Rules of Evidence give a trial court the authority to "exercise reasonable control over the ... order of ... presenting evidence so as to (1) make the ... presentation effective for the ascertainment of the truth, [and] (2) avoid needless consumption of time." FED. R. EVID. 611(a). The court did not abuse that authority by permitting the government to introduce evidence that the gun was loaded as part of its case-in-chief.

Gloster's second argument is that as physical evidence, the ammunition was merely cumulative of the officers' testimony that the gun was loaded, particularly since Gloster did not contest the point. There is no question, however, that physical evidence is an important part of an effective trial presentation and that the "persuasive power of the concrete and particular is often essential to the capacity of jurors to satisfy the obligations that the law places on them." *Old Chief v. United States,* 519 U.S. 172, 187, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). Indeed, as the Supreme Court noted in *Old Chief,* even a defendant's willingness to stipulate to a fact (which Gloster did not offer to do) does not generally deprive the prosecutor of the discretion to prove it: "[T]he familiar, standard rule [is] that ... a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the government chooses to present it." *Id.* at 186–87, 117 S.Ct. 644; *see Gartmon,* 146 F.3d at 1021 (holding that Rule 403 "does not generally require the government to sanitize its case ... or to tell its story in a monotone").

Defendant also contends that the government's repeated references to the ammunition during its witnesses' testimony were cumulative. But whether testimony should be truncated on the ground that it constitutes "needless presentation of cumulative evidence," FED.R.EVID. 403, is quintessentially a question we leave to the discretion of the trial court. Nor were the prosecutor's references to the ammunition, either in direct examination or closing argument, any more than were permissible to rebut defendant's theory of the case. *See Clark,* 184 F.3d at 866–67.

Third, Gloster contends that the evidence the gun was loaded was prejudicial, and that the potential for prejudice outweighed its probative value. It is true, as defendant suggests, that a loaded gun may

suggest a "different threat of danger" than an unloaded one. Def. Reply Br. at 15. But it is that very dangerousness that makes it less likely someone simply left the gun unattended on a step. Rule 403 focuses not on "prejudice" but "on the 'danger of unfair prejudice,'" and gives the court discretion to exclude evidence only if that danger 'substantially outweigh[s]' the evidence's probative value." *Gartmon*, 146 F.3d at 1021 (quoting FED. R. EVID. 403). The standard the Rule sets for exclusion of evidence has not been met here.

■ Finally, defendant claims that the district court failed to conduct the Rule 403 balancing on the record. Although the court's analysis was terse, stressing the relevance issue rather than the question of prejudice, so too was the defense counsel's argument, which had the same emphasis. *See* 10/23/97 Tr. at 9–11; 10/24/97 Tr. at 43–44. In any event, in a case like this, where "the considerations germane to balancing probative value versus prejudicial effect are readily apparent from the record," we will not reverse a conviction merely for a failure to conduct an on-the-record balancing. *United States v. Washington*, 12 F.3d 1128, 1135 (D.C.Cir.1994) (quoting *United States v. Manner*, 887 F.2d 317, 322 (D.C.Cir.1989)); *see United States v. Sutton*, 801 F.2d 1346, 1362 (D.C.Cir.1986).

### III

■ Gloster also contends that the district court erred in denying his motion for a new trial under Federal Rule of Criminal Procedure 33, which permits such motions on, inter alia, "the ground of newly discovered evidence."[2] Gloster argues that the proffered testimony of Gary Riddick qualifies as newly discovered evidence under the Rule.

■ This circuit follows a five-part test for granting a motion for a new trial based on newly discovered evidence. As

we said in *United States v. Lafayette*, a district court should grant a new trial "only when the following five conditions are met:

(1) the evidence [has] been discovered since trial; (2) the party seeking the new trial [has] show[n] diligence in the attempt to procure the newly discovered evidence; (3) the evidence relied on [is] not ... merely cumulative or impeaching; (4) [the evidence is] material to the issues involved; and (5) [the evidence is] of such nature that in a new trial it would probably produce an acquittal.

983 F.2d 1102, 1105 (D.C.Cir.1993) (quoting *Thompson v. United States*, 188 F.2d 652, 653 (D.C.Cir.1951)). We will reverse a district court's decision whether to grant such a motion "only if the court abused its discretion or misapplied the law." *Id.* The court did neither here.

The district judge found Gloster's motion to founder upon the first requirement of the *Lafayette* test, that the evidence truly be newly discovered, because Gloster was aware of its substance at the time of trial. 3/6/98 Tr. at 39–40. Citing *United States v. Ortiz*, 136 F.3d 161, 168 (D.C.Cir. 1998), defendant concedes that "the general rule in this Circuit has been that evidence known to the defendant at the time of trial does not qualify as newly discovered." Def. Br. at 10; *see Ortiz*, 136 F.3d at 168 ("The traditional definition of newly discovered evidence is evidence 'discovered since trial.'"). He also concedes that we have applied this rule to post-trial proffers of testimony from witnesses who refused to testify at trial. He contends, however, that most of these cases involved witnesses who had been codefendants, and whose changes-of-heart did not occur until after they were convicted and no longer had anything left to lose. Gloster urges us to take a different view of a case like his,

---

2. "The court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice.... A motion for a new trial based on the ground of newly dis-

covered evidence may be made only before or within two years after final judgment...." FED.R.CRIM.P. 33.

where the witness is a nonparty whose testimony only became available post-trial.

Although it is true that some of the cases in which we have applied the general rule involved codefendants, *see, e.g., United States v. Dale,* 991 F.2d 819, 839 (D.C.Cir.1993), that was not the situation in *Ortiz* itself, where the witness who initially refused to testify was a nonparty. *Ortiz* strongly suggested that even a non-party witness' post-trial offer to testify would fail to qualify as newly discovered evidence where the substance of the testimony was known to defendant at the time of trial. *Ortiz,* 136 F.3d at 168; *see id.* at 167 & n. 12. As in *Ortiz,* however, Gloster's claim fails so many parts of the *Lafayette* test that we need not tarry over the first.

The district court found the substance of Riddick's proffered testimony to fail the third element of *Lafayette* as well as the first, concluding that the new evidence was cumulative because it was "not significantly different from the statement that was offered and received at trial." 3/6/98 Tr. at 43. In reply, Gloster contends that Riddick's testimony "could provide more details" about the night of the arrest than the statement read at trial. Def. Br. at 19.[3] But to the extent Riddick's proffered testimony was not cumulative, it fails the second prong of *Lafayette* because it was not "diligen[tly]" discovered. The original Riddick statement was the product of an interview conducted by Gloster's defense counsel and her investigator. Riddick initiated the contact; he called the defense, volunteered to talk, and said he wanted to make a statement. 12/27/97 Tr. at 104. Defense counsel typed the statement herself, *id.* at 99, and the court admitted the statement in its entirety. *See* 3/6/98 Tr. at 35–36. If the newly proffered details truly were important, they could and should have been included in the original statement.[4]

Defendant further contests the district court's conclusion that the testimony was cumulative by arguing that the opportunity to observe Riddick's demeanor would permit the jury "to assess more accurately the credibility of Riddick's testimony" than did the mere antiseptic reading of his written statement. Although we agree that live testimony can convey considerably more than a cold record, in this case Riddick's presence would represent the proverbial two-edged sword. While it is possible Riddick's demeanor would make him more credible to the jury, it is also possible it would make him less. Moreover, unlike the unchallenged and unedited written statement, live testimony would subject Riddick to cross-examination on a host of issues, ranging from his relationship with Gloster to the credibility of his claim that he left a loaded gun on the steps while he disappeared to use the bathroom. Because we have no way to know whether Riddick's live testimony would put Gloster

---

3. At a later point, Gloster also suggests that the testimony would include more details of Riddick's personal history, including the fact that he is a "married father of three children with a very steady employment history," which would assertedly enhance his credibility with the jury. Def. Br. at 20. As noted below, there was no reason this information could not have been included in the original written statement.

4. Defendant does not dispute that he had a full opportunity to question Riddick before trial and to include whatever information he wanted in the written statement admitted into evidence. Indeed, he does not even dispute that he was aware of the details about which Riddick now offers to testify. Instead, at oral argument defendant suggested that his counsel may have intentionally failed to include greater detail in Riddick's statement as a matter of trial strategy: she expected him to testify, and may not have wanted to subject him to cross-examination based on any inconsistencies that might develop between the written and oral testimony. But if that is true, Riddick's additional details are neither newly discovered nor newly available. Rather, they are simply newly proffered, having been intentionally withheld as a result of the defense's tactical calculations. Events may have turned those calculations into miscalculations, but that is insufficient to save the proffered evidence from failing the first prong of the *Lafayette* test.

in a better or worse position, we have no basis to conclude that the fifth element of *Lafayette* is satisfied—that in a new trial the evidence "would probably produce an acquittal." *Lafayette*, 983 F.2d at 1105; see *United States v. McCord*, 509 F.2d 334, 342–43 (D.C.Cir.1974) (en banc).

## IV

Finding no error on the part of the district court, we affirm the judgment below.