## UNITED STATES of America,

### v.

### Archibald R. SCHAFFER III, Defendant.

### No. CRIM. A. 96–0314 (JR).

United States District Court, District of Columbia.

Dec. 3, 1999.

Donald C. Smaltz, Joseph P. Guichet, Wil Frentzen, Office of Independent Counsel, Alexandria, VA, for United States.

William H. Jeffress, Jr., Miller, Cassidy, Larroca & Lewin, LLP, Washington, DC, W.W. "Woody" Bassett, Bassett Law Firm, Fayetteville, AK, for defendant Archibald R. Schaffer III.

### MEMORANDUM AND ORDER

ROBERTSON, District Judge.

Archibald Schaffer's conviction of violating the Meat Inspection Act was reinstated by the Court of Appeals on July 23, 1999, and the case was remanded on September 1, 1999, for sentencing. *United States v. Schaffer*, 183 F.3d 833, 853 (D.C.Cir.1999). On October 13, 1999, Schaffer moved pursuant to Rule 33 of the Federal Rules of Criminal Procedure for a new trial, proffering the testimony of A. Michael Espy as newly discovered evidence. Espy, the former Secretary of Agriculture, was the principal target of the same independent counsel who indicted this case. He was indicted, tried, and acquitted of all thirty-nine charges brought against him. Now, if Schaffer were granted a new trial, Espy would testify for the defense.

The Meat Inspection Act violation of which Schaffer stands convicted was the provision of travel, lodging, and amenities to then-Secretary Espy in connection with a birthday party for Don Tyson in Russellville, Arkansas, in May 1993. After reviewing the evidence supporting that count of conviction, the Court of Appeals concluded that the prosecution had identified specific policies of concern to Tyson Foods that were pending in May 1993, about

which Schaffer or Tyson Foods had timely communications with Espy, who was then in a position to influence the "trajectory" of those policies. *Id.* at 850. Those elements having been established, the court said, the jury could rationally have decided the "intent question" either way. *Id.*

The prosecution's evidence on the "intent question"—that is, the intent to influence specific USDA policies, *see* 183 F.3d at 847—focused on proof that Schaffer arranged Secretary Espy's travel in a devious manner, calculated to disguise the fact that the trip was really personal, not official. The prosecution argument was that an invitation for Secretary Espy to address the Arkansas Poultry Federation in Russellville the day before the Tyson birthday party was a sham, something that would "appear to be an official business reason to be in Arkansas when, in truth and in fact, the real reason Mr. Espy traveled to Arkansas was to be with his girlfriend, Patricia Dempsey, and to attend a birthday party celebration . . . ." 6/16/98 tr. at 108 (opening statement). The proposition advanced by the prosecution case and obviously accepted by the jury was: (i) Schaffer put Secretary Espy's trip together to make it look like official travel to address the Arkansas Poultry Federation; (ii) the Arkansas Poultry Federation speech was a sham; and thus (iii) Schaffer must have had a guilty reason for doing what he did. *See* 6/23/98 tr. at 1367–70.

But Espy's testimony, which I found credible in its material respects after observing the witness, is that the Arkansas Poultry Federation meeting was not a sham event. Espy's testimony is that he not only attended the meeting and gave a speech to about 40 people, but that he prepared carefully for the appearance by making detailed handwritten notes en route to Russellville, working off prepared "talking points" so that he could "internal-

ize" the talking points and speak extemporaneously.[1] Contrary to the prosecution theory that Espy was lured to Russellville by the expensive entertainment and by the prospect of meeting his girlfriend there, Espy's testimony is that he accepted the invitation to go to Russellville as a courtesy to Tyson and because Arkansas Senator David Pryor had urged him to accept; that it was nothing special for a native of Indianola, Mississippi, to be invited to hear B.B. King ("no stroke in that for me"); and that he did not know that Patricia Dempsey would be in Russellville until after his arrival. Espy also swears that, during his trip to Russellville, he had no conversations about Tyson Foods or about USDA policies, and that nothing was said to him or done in his presence that suggested to him that the birthday party or his invitation to it was intended to influence him.

■ I find that Espy's evidence is not merely cumulative or impeaching. There was trial testimony to the effect that the APF meeting was not a sham, *see* 6/18/98 tr. at 504 (Don Allen); 6/23/98 tr. at 1347–48, but the testimony was elicited on cross-examination from a prosecution witness who did not and could not testify, as only Espy can, that it was the APF meeting and not the birthday party that drew Espy to Russellville, and that Espy needed no "cover" for his travel.

The "intent question" relates of course to Schaffer's subjective intent, not Espy's, but the prosecution's theory of the case placed the nature of the APF meeting and Espy's real reasons for being in Russellville directly in issue. I find that Espy's testimony is clearly material to the issues involved.

Because the evidence of Schaffer's specific unlawful intent was so thin—it was an entirely circumstantial case on which the jury could have decided either way, *Schaf-*

---

1. The notes and the talking points undercut the defense position that no significant USDA policy initiatives were afoot at the time of the Russellville party, but that issue—if it is still an issue at all after the Court of Appeals' decision—is of far less importance than the "intent question."

*fer,* 183 F.3d at 850—the proffered evidence about the nature of the APF meeting and Espy's reasons for attending has an important bearing on the "intent question." I find it indeed to be of such nature that, in a new trial, it would probably produce an acquittal.

Those findings satisfy three of the five elements of this Circuit's test for evaluating newly discovered evidence motions, first announced in *Thompson v. United States,* 188 F.2d 652 (D.C.Cir.1951). The record facts relating to the other two *Thompson* elements—that the evidence has been "discovered since trial" and that defendant has been "diligent" in the attempt to procure it—are not in dispute: Defense counsel knew the substance but not the details of Espy's testimony at the time of trial. After being told unequivocally by Espy's lawyers that Espy would invoke his Fifth Amendment privilege and refuse to testify at Schaffer's trial, defense counsel issued no trial subpoena to Espy and filed no motion for a continuance. The prosecution's argument, based on those undisputed facts, is that the new trial motion must fail as a matter of law. OIC Opposition at 11.

Orders granting new trials for newly discovered evidence are rare, as they should be. Most of the reported cases are appeals from district court denials of Rule 33 motions, and very few of them involve exculpatory testimony fleshed out in an evidentiary hearing and found to be of such nature that it would probably lead to an acquittal in a new trial. The result is a

body of case law with diverse fact patterns but not much analysis.

■ The one clear rule in this Circuit, *see United States v. Dale,* 991 F.2d 819 (D.C.Cir.1993), is that the testimony of a co-defendant or a coconspirator can never support a Rule 33 motion for new trial. The rule of the *Dale* case is in accord with universal mistrust of such testimony, because of the perception that "a convicted co-defendant might be trying 'to assume the entire guilt,'" *United States v. Purnell,* 155 F.3d 563, 1998 WL 405942, *3 (4th Cir.(Va.))(quoting *United States v. Montilla–Rivera,* 115 F.3d 1060, 1066 (1st Cir.1997)); *cf. Byers v. United States,* 649 A.2d 279, 287 (D.C.1994), or that an already convicted co-defendant has nothing to lose by absolving a co-defendant, *United States v. Metz,* 652 F.2d 478, 481 (5th Cir.1981), or that already sentenced co-defendants "may say whatever they think might help their co-defendant, even to the point of pinning all the guilt on themselves, knowing they are safe from retrial," *United States v. Reyes–Alvarado,* 963 F.2d 1184, 1188 (9th Cir.1992); *see also United States v. Lockett,* 919 F.2d 585, 591 (9th Cir.1990). Only the First Circuit has indicated that co-defendant testimony, although certainly suspect, might be "newly discovered," *see Montilla–Rivera,* 115 F.3d at 1066.

Espy, however, was neither a co-defendant of Schaffer nor a co-conspirator,[2] and Rule 33 case law with respect to the testimony of persons who are neither co-defendants nor co-conspirators is neither con-

---

**2.** The Russellville birthday party was the subject of counts 1, 2, 10, 19, 26, and 37 of the indictment against Espy, but Espy was not charged with conspiracy. The indictment in the present case charged Schaffer with conspiracy and named unindicted co-conspirators, but it did not name Espy. The prosecution did make the post-indictment assertion that Espy was a co-conspirator (opposing Schaffer's motion for a bill of particulars, docket no. 137, filed 2/23/98), but it did not contest the finding made at trial that there had been no proof of conspiracy, 6/22/98 tr. at 1052–69. Nor, after that ruling, did it offer to

prove the existence of a conspiracy using an alleged co-conspirator statement, 6/23/98 tr. at 1381–82; *see Bourjaily v. United States,* 483 U.S. 171, 196–99, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). Nor did it appeal from the order dismissing the conspiracy count against Schaffer at the close of the prosecution's case-in-chief, *see id.*

In any case, the rationale supporting the distrust of co-defendant and coconspirator testimony does not apply to Espy: he is now a practicing lawyer, 11/12/99 tr. (a.m.) at 10, and is subject to bar discipline, not to mention the law of perjury.

trolling nor uniform. The most recent opinion on newly discovered evidence in this Circuit, *United States v. Gloster*, 185 F.3d 910 (D.C.Cir.1999), observes that an earlier decision, *United States v. Ortiz*, 136 F.3d 161, 168 (D.C.Cir.1998), "strongly *suggested* that even a non-party witness' post-trial offer to testify would fail to qualify as newly discovered evidence where the substance of the testimony was known to defendant at the time of trial," *Gloster*, 185 F.3d at 915 (emphasis added). That suggestion, had it been adopted, would have created a *per se* rule requiring the denial of the instant motion, but the *Gloster* opinion declined to "tarry" over the point, *id.*, and *Ortiz*, although expressing surprise at petitioner's "newly minted definition of 'newly discovered evidence,'" did not reject it. 136 F.3d at 167. The *Dale, Ortiz,* and *Gloster* decisions thus do not establish Circuit precedent on the precise question presented by this motion.

The legal proposition advanced by the prosecution is that the law should recognize a *per se* rule: that a Rule 33 motion may never be granted for information that was known to the defense at the time of trial. Our Court of Appeals has not adopted such a rule, however, and my prediction is that they will not.[3] The First Circuit has recently, and persuasively, rejected a *per se* rule, concluding that "the better rule is not to categorically exclude the testimony of a co-defendant [N.B.: a co-defendant] who asserted his Fifth Amendment privilege at trial ...." *Montilla–Rivera*, 115 F.3d at 1066. In that case, the First Circuit agreed with other courts that a co-defendant's testimony should be viewed with "great skepticism," *id.* at 1066, but observed that

> [G]iven the '[i]n the interests of justice' standard of Fed.R.Crim.P. 33, there seems little distinction between evidence which a defendant could not present because he did not know of it and evidence

which he could not present because the witness was unavailable despite exercising due diligence.

*Id.*

The First Circuit's analysis of whether "newly available" evidence is "newly discovered" within the meaning of Rule 33 places considerable weight on diligence, the last of the five *Thompson* elements, and—again, persuasively—suggests that the correct rule is not a *per se* rule, but one *permitting a trial court within the proper exercise of its discretion to find "newly available" evidence to be "newly discovered" if it meets the other applicable criteria and if it could not have been adduced at the first trial by diligent efforts.* See *Montilla–Rivera*, quoted *supra*; *Vega Pelegrina v. United States*, 601 F.2d 18, 21 (1st Cir.1979).

■ Could Espy's testimony have been adduced at the first trial by diligent efforts? Or, as the prosecution suggests, should the decisions and actions of defense counsel be dismissed as "tactical"? Defense counsel made forthright representations at the November 12, 1999 hearing as to what he knew and when, and what he did or did not do and why. Those representations were not challenged or refuted. He said he had no direct communications with Espy, 11/12/99 tr.(p.m.) at 21; that he and his associates had contact only with Espy's counsel, *see id.* at 22; that he was refused the opportunity to interview Espy "throughout and up to the time of our trial," *id.*; that he did not know details of what Espy could say but "certainly knew enough about Mr. Espy's belief ... that the Arkansas Poultry Federation meeting was legitimate, was legitimate business....," *id.*; and that, about a week before trial, he knew "that we very much wanted Mr. Espy to testify," *id.* at 23. Also about a week before trial, "about at the time we were trying to decide whether to seek a continuance," *id.* at 26, counsel

---

**3.** *Cf.* Oliver Wendell Holmes, Jr., *The Path of the Law*, 10 Harv. L.Rev. 457, 460–61 (1897) ("The prophecies of what the courts will do in fact, and nothing more pretentious, are what I mean by the law.")

had a direct conversation on the subject of whether Espy would testify at Schaffer's trial, "[a]nd the answer was no . . . ." *Id.*

The prosecution asserts that defense counsel should have moved for a continuance, OIC Opposition at 10. The cases cited for that proposition, *United States v. Wright,* 625 F.2d 1017, 1019 (1st Cir.1980) and *United States v. Kamel,* 965 F.2d 484, 493 n. 21 (7th Cir.1992), are inapposite: in *Wright,* the witness in question was not under indictment facing her own trial, but had left town without leaving a forwarding address, *Wright,* 625 F.2d at 1018; and in *Kamel,* the defendant ignored what he knew or suspected about his brother's testimony and did not mention a continuance to his attorney until the first day of trial, *Kamel,* 965 F.2d at 493 & n. 21. Here, by contrast, defense counsel reasoned:

> With respect to Mr. Espy, in order for us to get a postponement of our trial until after his, it would be necessary for us to represent that he would testify in Archie Schaffer's trial if it was after his. I could not make that representation, because if Mr. Espy had been convicted on any one or more of the counts, he would have certainly appealed, and there was no prospect that we would have his—be able to get his testimony after the trial.

11/12/99 tr.(p.m.) at 27. Far from being "tactical," counsel's unwillingness to file a motion without a good-faith basis for doing so was in compliance with the professional behavior expected of officers of this Court.

The prosecution asserts next that counsel should have attempted to call Espy to the stand to obtain his testimony and, if Espy invoked his Fifth Amendment privilege, that counsel should have moved to have use immunity conferred upon him in order to "demonstrate his due diligence and . . . establish the bona fides of his otherwise suspect claim that he truly wanted this witness to testify at his first trial," OIC Opposition at 10, citing *United States v. La Duca,* 447 F.Supp. 779, 786 (D.N.J. 1978). The witness in question in the *La Duca* case was a co-defendant who had pleaded guilty. Defense counsel did call him to the stand to testify. When the witness invoked his privilege against self-incrimination, the trial judge *invited* a defense motion to confer immunity, *La Duca,* 447 F.Supp. at 784. When no such motion was made, the trial judge concluded that the defense maneuver had been tactical and denied the new trial motion. *See id.* at 788. In this case, the prosecution's suggestion of a motion for use immunity is gratuitous, since it is unaccompanied by a representation that the Office of Independent Counsel would have given it. In any event, however, I have no basis on which to conclude that counsel's wish to have Espy testify was not genuine. Counsel's reasoning was straightforward and correct: "Having been represented by his counsel that he was not going to do [sic] testify, I was not going planning [sic] to put him in here in a public courtroom three months before his own trial and make him take the Fifth." 11/12/98 tr.(p.m.) at 26. I do not find that reasoning inconsistent with the showing of diligence that is necessary to support a Rule 33 motion for a new trial.

The prosecution asserts, finally, that the defense should have put Espy's name on the pre-trial witness list or at least attempted to secure his written statement, OIC Opposition at 10. The witness lists were filed June 12, 1998, four days before the trial began, and counsel was told definitively a week before trial that Espy would not testify. Defense counsel says, "[W]e thought we were only supposed to list witnesses we intended to call," 11/12/99 tr.(p.m.) at 29. He was right. As for a written statement, defense counsel assumed, reasonably, that, if Espy's lawyers would not let him testify, "there was no way they were going to let him give a written statement that I could offer at trial," *id.,* and, even if they did, "it never occurred to me that [a statement] would be admissible . . . ." *Id.* It would not have been.

The reasoned decisions of counsel not to behave unprofessionally or to attempt futile acts cannot fairly be characterized as tactical. Here, counsel ascertained through repeated and timely verbal communications between experienced defense counsel that Espy would invoke his Fifth Amendment privilege and refuse to testify at Schaffer's trial. I find that diligent efforts were made to adduce Espy's testimony at Schaffer's trial, and that the testimony could not have been adduced by other or more diligent efforts.

In summary, I have found that the proffered testimony of Michael Espy is not cumulative, that it is material, and that it would probably produce an acquittal at a new trial. I have found that Schaffer's attempts to adduce the testimony at trial were adequately diligent and that the testimony could not have been adduced by other or more diligent efforts. In these circumstances, considered "in the context of all prongs" of the *Thompson* test, *cf. Montilla–Rivera*, 115 F.3d at 1066, the interests of justice require that defendant's motion for new trial be granted. Accordingly, it is this 3d day of December 1999,

**ORDERED** that the motion for a new trial [# 265] is **granted.**