214 F.3d 1359 (D.C. Cir. 2000)
 United States of America, Appellant
v.
Archibald R. Schaffer III, Appellee
 No. 99-3153
 United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT
 Argued March 24, 2000
Decided June 27, 2000
 
 Appeal from the United States District Court for the District of Columbia(No. 96cr00314-02)
 Charles M. Kagay, Chief Appellate Counsel, Office of Independent Counsel, with whom Donald C. Smaltz, Independent Counsel, Joseph P. Guichet, Senior AssociateIndependent Counsel, and Wil Frentzen, Associate Independent Counsel, were on the briefs, argued the cause for appellant.
 William H. Jeffress, Jr., with whom Joe R. Caldwell, Jr., Scott L. Nelson, Grant R. Vinik, and Woody Bassett were on the brief, argued the cause for appellee.
 Before Edwards, Chief Judge, Henderson, Circuit Judge, and Buckley, Senior Circuit Judge.
 Opinion for the court filed by Senior Judge Buckley.
 Buckley, Senior Judge:
 
 
 1
 In 1998, Archibald R. Schaffer III was convicted of attempting to influence the Secretary of Agriculture in violation of the Meat Inspection Act. The United States appeals the district court's decision to grant Schaffer a new trial based on "newly discovered evidence."Because we find that Schaffer was not diligent in his efforts to procure the evidence before his trial and that the evidence would not be likely to result in an acquittal upon retrial, we reverse.
 
 I. Background
 
 2
 The facts of this case are set forth in detail in our opinion reviewing the district court's grant of Archibald Schaffer's earlier post-trial motion for a judgment of acquittal. See United States v. Schaffer, 183 F.3d 833, 836-39, 847-50 (D.C. Cir. 1999). We present here only those facts that are relevant to this appeal.
 
 
 3
 In 1993, when Alphonso Michael Espy was serving as its Secretary, the Department of Agriculture ("USDA") was developing and implementing certain food safety initiatives related to meat and poultry that would have an impact on Tyson Foods International. See id. at 837, 849. On April 21, 1993, Don Tyson, Chairman of the Board of Directors of Tyson Foods, sent Secretary Espy both a printed invitation to a lavish birthday party he was hosting in Russellville, Arkansas over the weekend of May 14-16 and a handwritten note.The note advised the Secretary that he would also be invited to attend an Arkansas Poultry Federation ("APF") event during that same weekend and confirmed that a private plane would be available to fly him to and from Arkansas. See id. at 847. Five days later, the Senior Vice President of the APF signed a letter inviting Secretary Espy to address the APF on May 15 in Russellville. He sent the letter to Schaffer, who was Tyson Foods' Director of Media, Public and Governmental Affairs. Schaffer in turn mailed and faxed the letter to the Secretary. Schaffer also helped Secretary Espy's office coordinate some of the Secretary's weekend travel and accommodations. The Government presented evidence that, in making those arrangements, Schaffer mentioned only the APF meeting, ostensibly to conceal the fact that the Secretary and a woman companion planned to attend the Tyson birthday party.
 
 
 4
 On May 15, Secretary Espy flew to Russellville and spoke to a group of APF invitees. He attended the Tyson birthday party that evening, stayed with his companion at the Tyson Foods Management Training Complex, and returned with her to Washington the next day on a Tyson Foods corporate airplane. Schaffer subsequently caused the APF and not Tyson Foods to be reimbursed by the USDA for the cost of Secretary Espy's travel and lodging.
 
 
 5
 In January 1998, an independent counsel who had been appointed to investigate charges that had been made against Espy indicted Schaffer on several counts alleging violations of federal criminal statutes in connection with these and other events. Espy, who was by then facing charges under a separate indictment, did not testify at Schaffer's trial. In June 1998, the jury found Schaffer guilty under two counts:the first, for violating the Meat Inspection Act ("MIA"), 21 U.S.C. 622 (1994), by working to secure Espy's attendanceat the Tyson birthday party; and the second (which is not before us), for having provided Espy with unlawful gratuities in violation of 18 U.S.C. 201(c) (1994). Schaffer, 183 F.3d at 850.
 
 
 6
 After the jury's verdict, Schaffer moved for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, challenging the sufficiency of the evidence to sustain the convictions. The district court granted judgment of acquittal on both counts. The independent counsel appealed, and this court affirmed the judgment of acquittal on the gratuities count but reinstated the jury's verdict on the MIA count, holding that a reasonable juror could have found that Schaffer participated in securing Espy's attendance at the party with the intent to influence him with respect to specific policies of concern to Tyson Foods. Id. at 847-50.
 
 
 7
 While Schaffer's appeal was pending, a jury acquitted Espy on all charges. Following the final disposition of Schaffer's appeal and the conclusion of Espy's case, Schaffer filed a motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. He argued, among other things, that Espy's testimony constituted "newly discovered" evidence because it had only become available at the conclusion of the Espy trial, which resulted in the expiration of Espy's Fifth Amendment privilege against self-incrimination. Because the district court agreed that Espy's testimony might constitute newly discovered evidence likely to produce an acquittal upon retrial, it held an evidentiary hearing to evaluate Espy's testimony. See United States v. Schaffer, Crim. Action No. 96-0314, Mem. at 4-5, reprinted in Joint Appendix ("J.A.") at 252-53.
 
 
 8
 At the hearing, Espy testified that he considered the APF appearance to be a legitimate event and that it was the primary reason for his trip to Arkansas. He stated that he attended the Tyson birthday party as a "courtesy" to Don Tyson and his son John, whom he had met on a few occasions.Espy asserted that he did not know Schaffer and that he had no knowledge of Schaffer's involvement in his visit to Arkansas that weekend. Finally, Espy testified that he did not recall any discussion with anyone from Tyson Foods at either the APF meeting or the birthday party that related to Tyson Foods or USDA policies; nor did he recall any attempt to influence him with respect to his duties as Secretary of Agriculture.
 
 
 9
 During the course of the hearing, Schaffer's counsel advised the court that, prior to Schaffer's trial, he had been told by Espy's counsel that Espy had declined Schaffer's request for an interview. Espy's counsel revealed enough of Espy's view of the relevant events, however, for Schaffer to know that he "very much want[ed Espy] as a witness." Tr. of Hearing on Motion for a New Trial at 24, reprinted in J.A. at 384. When Schaffer's counsel stated that he wanted Espy to testify in Schaffer's trial, "the answer was no, that [Espy] was not going to testify." Id. at 26, reprinted in J.A. at 386. In light of this exchange, Schaffer's counsel saw no point in subpoenaing Espy, "put[ting] him in here in a public courtroom ... and mak[ing] him take the Fifth." Id. Nor did his counsel move for a continuance until after Espy's trial or otherwise make the district court aware of his desire to have Espy testify. He explained that he did not feel he had a good faith basis for seeking a continuance in light of the certainty that Espy would appeal any conviction and remain unavailable as a witness for an indefinite period. See id. at 26-30, reprinted in J.A. at 386-90.
 
 
 10
 At the hearing's conclusion, the district court found Rule 33's requirements had been satisfied and granted Schaffer's motion for a new trial. The independent counsel timely filed this appeal, and we have jurisdiction pursuant to 18 U.S.C. 3731.
 
 II. Analysis
 
 11
 Rule 33 authorizes a district court to grant a new trial "if the interests of justice so require." It also provides:A motion for new trial based on newly discovered evidence may be made only within three years after the verdict or finding of guilty.... A motion for a new trial based on any other grounds may be made only within 7days after the verdict or finding of guilty....
 
 
 12
 Fed. R. Crim. P. 33. Because Schaffer filed his motion approximately fifteen months after his conviction, the parties agree that the motion was timely only if Espy's testimony constituted "newly discovered evidence."
 
 
 13
 To evaluate a motion for a new trial based on newly discovered evidence, we apply the standards we first set out in Thompson v. United States, 188 F.2d 652 (D.C. Cir. 1951).Thompson holds that a court may grant a new trial on the basis of newly discovered evidence only where each of the following conditions has been met:
 
 
 14
 (1) the evidence must have been discovered since the trial; (2) the party seeking the new trial must [have shown] diligence in the attempt to procure the newly discovered evidence; (3) the evidence relied on must not be merely cumulative or impeaching; (4) [the evidence] must be material to the issues involved; and (5) [be] of such nature that in a new trial it would probably produce an acquittal.
 
 
 15
 Id. at 653; see also United States v. Gloster, 185 F.3d 910, 914 (D.C. Cir. 1999) (same). A district court's grant of a new trial will be reversed "only if the court abused its discretion or misapplied the law." Gloster, 185 F.3d at 914 (internal quotation marks and citation omitted). We find that the district court abused its discretion in this case because Schaffer failed to satisfy Thompson's second and fifth requirements, namely, that a party seeking a new trial demonstrate diligence in procuring the evidence and that the evidence would be likely to produce an acquittal upon retrial.
 
 A. Diligence in procuring evidence
 
 16
 What constitutes diligence in the pursuit of evidence depends entirely on the circumstances of the particular case. When, as here, a defendant believes that a particular person's testimony would be vital to his defense but either cannot locate the witness or believes it would be futile to subpoena him, the defendant has the obligation to seek a continuance of his trial or to explain to the trial court why the desired witness will not be produced. A defendant who fails to inform the court of his predicament will not satisfy Thompson's second prerequisite. See, e.g., United States v. Garland, 991 F.2d 328, 335 (6th Cir. 1993) (defendant who sought continuance after unsuccessful attempt to locate witness satisfied diligence requirement); United States v. Kamel, 965 F.2d 484, 493 (7th Cir. 1992) ("If there is possible evidence which would exonerate a defendant, he may not simply ignore it...."); United States v. Kulczyk, 931 F.2d 542, 549 (9th Cir. 1991) (counsel's failure to inform court before or during trial that he could not locate two witnesses "indicates a lack of due diligence"); United States v. Wright, 625 F.2d 1017, 1019 (1st Cir. 1980) (defendant who failed to seek continuance to locate witness was not diligent).
 
 
 17
 Schaffer repeats the argument made at the motion hearing that it would have been futile to subpoena Espy or seek a continuance. As suggested by the cases cited in the preceding paragraph, however, a belief in the futility of any such action will not satisfy the need for a concrete attempt either to compel the production of relevant evidence or to seek some accommodation from the trial court that would preserve the defendant's right to present evidence that was critical to his case. Whatever the minimum requirement of diligence, it cannot be a purely private evaluation of the availability of the testimony or the likelihood of relief from the court. Such a standard would seriously impair the important goal of finality that the diligence requirement serves. See UnitedStates v. Ugalde, 861 F.2d 802, 808 (5th Cir. 1988) (motion for new trial is subject to "an unusually stringent [five requirement] test ... [that] gives great weight to society's interest in the finality of criminal convictions").
 
 B. Likelihood of an acquittal
 
 18
 Schaffer has failed to establish that Espy's testimony would be likely to result in an acquittal because his testimony is not relevant to the crime for which Schaffer was convicted. Schaffer was found guilty of violating the MIA, which provides in relevant part:
 
 
 19
 Any ... agent or employee of any person, firm, or corporation, who shall give, pay, or offer, directly orin directly, to any ... officer or employee of the United States authorized to perform any of the duties prescribed by this chapter ... any money or other thing of value, with intent to influence said ... officer or employee of the United States in the discharge of any duty provided for in this chapter, shall be deemed guilty of a felony....
 
 
 20
 21 U.S.C. 622. The prior appeal of Schaffer's MIA conviction centered on "whether the prosecution presented sufficient evidence for a reasonable jury to conclude that Schaffer acted with the requisite intent to influence any of the Secretary's duties under the Meat Inspection Act." Schaffer, 183 F.3d at 845 (emphasis added). As the prosecuting attorney emphasized in his closing argument to the jury, "this case is not ... about whether ... Secretary Espy was bought or could be bought. This is about the giver and what was in the giver's mind when the things given were given." Trial Tr. at 1702, reprinted in J.A. at 500.
 
 
 21
 As is evident from Espy's testimony during the evidentiary hearing on the motion for a new trial, his testimony at a new trial would do little to undermine the independent counsel's case. Espy testified that he believed that the APF function was a legitimate event, that his primary reason for traveling to Arkansas the weekend of the Tyson birthday party was to attend the APF function, and that he was aware of no attempt to influence his exercise of his official duties during the course of the weekend. Nothing in that testimony bears on Schaffer's intent in helping to arrange for Espy's attendance at these functions. The jury, for example, could fully accept Espy's statement that he believed the meeting was a legitimate event and still "reasonably infer that the [APF] meeting, while legitimate, had nevertheless been set up to provide Espy with official cover." Schaffer, 183 F.3d at 847.
 
 
 22
 Because we conclude that the district court erred in finding that Schaffer had satisfied Thompson's second and fifth requirements, we do not reach the question of whether Espy's newly available testimony may be considered to be "newly discovered" within the meaning of Rule 33. Although we have previously noted this circuit's "strong[ ] suggest[ion]" that "a non-party witness' post-trial offer to testify would fail to qualify as newly discovered evidence where the substance of the testimony was known to defendant at the time of trial," Gloster, 185 F.3d at 915, we leave for another day the question of the vitality of this court's earlier opinions in Di Giovanni v. Di Giovannantonio, 233 F.2d 26, 28-29 (D.C. Cir. 1956), and Amos v. United States, 218 F.2d 44, 44 (D.C. Cir. 1954), in which we granted new trials on the basis of "newly discovered" evidence that was known to exist but was unavailable to the defendant at the time of trial.
 
 III. Conclusion
 
 23
 For the reasons given above, former Secretary Espy's newly available testimony is not a sufficient basis for granting Schaffer a new trial. Accordingly, we reverse the order granting a new trial, reinstate the jury's verdict on the Meat Inspection Act count, and remand the case to the district court for sentencing.
 
 
 24
 So ordered.